Irving H. Saypol, J.
Two motions, before answer, to dismiss the complaint are consolidated for decision.
The issue in this action is invalidity of legislation for alleged constitutional violation. The plaintiffs mount a multi-pronged assault against 79 laws enacted at the 1971 session of the Legislature on the Governor’s messages of necessity — emergency messages — issuing in purported compliance with section 14 of article III of the New York State Constitution. In the end, as will be seen, unusual relief is sought which would cast the judiciary in the role of ombudsman for a period of five years, qualifying the recognized discretionary exercise of their separate constitutionally authorized powers by the legislative and executive branches of the State by judicial monitoring (Laird v. Tatum, 408 U. S. 1, [June 26, 1972, majority opn., Burger, Oh. J.]), a subject immediately apparent as judicial intrusion, trespass by one branch of constitutional government npon the other two constitutional branches. The approach here then must be cautious, the tread gingerly.
The plaintiffs are the legislative director of the New York Civil Liberties Union who is suing for himself and representatively, two State Senators, four Assemblymen, the National Welfare Rights Organization, a recipient of welfare allowances *925 who alleges that he is personally aggrieved by certain of the laws, a journalist and the legislative representative of the United Federation of Teachers who also sues individually and in its behalf. The defendants are the Governor, the Secretary of State, the Speaker of the State Assembly, the Temporary President of the State Senate, the Clerk of the Assembly and the Secretary of the Senate, each of whom is alleged to have been a member of the Republican Party, the party in the majority in both houses of the Legislature at all relevant times. Numerous organizations, civic and otherwise, together with 38 Democratic Assemblymen, appear amici curiae, in support of the plaintiffs.
The relief sought is broad and rigidly restrictive, (A) a declaration that all laws enacted on messages of necessity during the 1971 regular legislative session are “ null, void and of no effect (B) a preliminary and permanent injunction restraining the defendants from implementing or enforcing such laws; (C) in the alternative, a declaration that effective 30 days after the final adjournment of the [1972] regular session, all chapters of the Laws of 1971 passed on messages of necessity be considered 11 null, void and of no effect ’ ’, and that their implementation and enforcement be enjoined unless, prior to such time, the Legislature shall have considered and re-enacted and the Governor shall have reapproved such chapters, if any, without resort to messages of necessity; (D) a preliminary and permanent injunction restraining the defendants from future use of the message of necessity unless each such message specifies (1) the facts creating a compelling State interest necessitating an immediate vote, rather than a vote after a three-day waiting period, (2) the adverse consequences that would flow from delaying the vote for a three-day period, (3) the reasons why the bill was not and could not have been considered and voted upon earlier in the legislative session, and (4) the reasons why less drastic alternatives, such as extending the legislative session or convening a special legislative session, would not suffice; and finally, the clincher in the prayer for relief, that the court retain for five years continuing jurisdiction over the issues or permit any citizen of the State who feels aggrieved by any law enacted pursuant to a message of necessity to challenge in court the necessity for an immediate vote on such legislation.
Section 14 of article III of New York State Constitution, to be interpreted here reads: ‘ ‘ No bill shall be passed or become a law unless it shall have been printed and upon the desks of the members, in its final form, at least three calendar legislative days prior to its final passage, unless the governor, or the act *926 ing governor, shall have certified, under his hand and the seal of the state, the facts which in his opinion necessitate an immediate vote thereon, in which case it must nevertheless be upon the desks of the members in final form, not necessarily printed, before its final passage; nor shall any bill be passed or become a law, except by assent of a majority of the members elected to each branch of the legislature; and upon the last reading of a bill, no amendment thereof shall be allowed, and the question upon its final passage shall be taken immediately thereafter, and the ayes and nays entered on the journal.” (Emphasis supplied.)
Governor Rockefeller and Secretary of State Lomenzo move to dismiss the complaint for failure to state a cause of action (CPLR 3211, subd. [a], par. 7) as do Senator Brydges and Mr. Abrams who urge the additional ground that the court does not have jurisdiction (CPLR 3211, subd. [a], par. 3) — that the plaintiffs lack standing. In view of the obvious importance of the issues presented and inasmuch as the plaintiffs have discussed at length in their brief the question of standing, this debatable issue will initially be considered.
The point of departure is St. Clair v. Yonkers Raceway (13 N Y 2d 72, cert. den. 375 U. S. 970), a decision 4 to 3. It was there held, following long-established precedent and rejecting the rule applied by the majority of the states, that a plaintiff-bettor, suing as a citizen taxpayer, had no standing to attack a law alleged to violate the constitutional prohibition against the expenditure of public funds to private parties (N. Y. Const., art. VII, § 8). Noting that its decision was “ also the law of the United States of America ” (p. '76), the majority reiterated its rationale that the courts lack jurisdiction to supervise the acts of other co-equal departments of government; that assumption of jurisdiction would constitute interference with an equally independent branch of government and that there exists “ ‘ the impropriety of judicial interpretations of law at the instance of those who show no more than a mere possible injury to the public’” (p. 77). The dissenting opinion referred to three nonfiscal eases in which the objection of want of standing was rejected even though the interests of the plaintiffs seemed remote.
St. Clair (supra) was followed by a unanimous court in Matter of Donohue v. Cornelius (17 N Y 2d 390). There a petitioner who had passed a challenged promotional examination for sergeant of the State Police and was later dismissed from the force for insubordination was held to have no standing as a private citizen taxpayer to bring a summary proceeding (CPLR *927 art. 78) to annul State Police regulations governing promotions and competitive examination therefor. After discussing the rule denying the plaintiff standing to litigate as “ too broad to be so easily distinguished,” Judge Keating observed (pp. 397-398): “ It is a rule of law designed to prevent the courts from giving judicial interpretations of legislative acts or executive rulings in the absence of injury or threatened injury to one’s personal rights. Since the petitioner in this action has demonstrated no personal injury suffered as a result of the acts complained of, and since he has made no showing to bring his case within the exception to the rule of practice under which this court on occasion decides questions which even though moot as between the parties affect the entire State or transactions of a similar character which are numerous and likely to arise with frequency, we are compelled to dismiss his action. (Matter of Adirondack League Club v. Board of Black Riv. Regulating Dist., 301 N. Y. 219.) ”
In Matter of Posner v. Rockefeller (26 N Y 2d 970), it was held that three members of the New York State Assembly lacked standing, either as citizens and taxpayers or as Assemblymen, to challenge the validity of portions of appropriation bills submitted by the Governor and enacted into law. Moreover, ‘ ‘ It matters not whether such bills have been passed by the Legislature or were still pending before that body at the time the proceeding was instituted ’ ’ (p. 972). Three Judges concurred on the question of standing under constraint of St. Clair.
St. Clair (13 N Y 2d 72, supra) and Posner (supra) were followed by a bare majority of the court in Hidley v. Rockefeller (28 N Y 2d 439). The plaintiffs, including State employees who had been dismissed as a result of reductions in appropriations, sought to challenge the validity of appropriation and budget laws for failure to comply with the itemization requirements of article VII of the State Constitution. In holding that the plaintiffs lacked capacity to sue, the majority stated (p. 440): “ The test of plaintiffs’ standing to challenge the integrity of the legislative process of which they complain is that of personal aggrievement (St. Clair v. Yonkers Raceway, 13 N Y 2d 72) and this has not been demonstrated. Plaintiffs’ real quarrel is with the amount of the appropriations, not with the form or method whereby they were requested and enacted; and there is no logical connection between the job losses now apprehended and the form of the budget bills now attacked. Neither is there any showing that any positions would be more secure had the budgetary and legislative processes taken the form that plain *928 tiffs assert are constitutionally mandated. We found no basis for the plaintiffs’ claim of standing in Matter of Posner v. Rockefeller (26 N Y 2d 970) and certainly these appellants present no stronger case.”
The three dissenters agreed for themselves that the plaintiffs had standing to bring the action but differed inter sese on the merits. Judge Breitel in dissent specifically adverted to the great importance of the issues involved (p. 441).
(It is interesting to note a recent decision upholding the right of the State Comptroller to seek declaratory judgment against the Governor as to whether appropriations bills submitted by the Governor to the Legislature were in compliance with constitutional requirements. Levitt v. Rockefeller 69 Misc 2d 337, Koreman, J. Cf. Posner v. State of New York, 69 Misc 2d 958, Mahoney, J.)
Less than two weeks after the decision in Hidley (28 N Y 2d 439, supra), the Court of Appeals decided Bloom v. Mayor of City of New York (28 N Y 2d 952). In Bloom, the plaintiffs, taxpayers in the City of New York, sought a declaration that the city’s tax levy was invalid and that an interrelated State law authorizing and directing the State Board of Equalization and Assessment to establish special equalization ratios for the city, was unconstitutional. The lower courts were unanimous in holding that plaintiffs had standing to sue. This was affirmed in the Court of Appeals by a vote of 4 to 3, the majority (consisting of the three dissenting Judges in Ridley (28 N Y 2d 439, supra) joined by Scileppi, J.) observing (pp. 953-954): “It is only then necessary to note that, even on a narrower view than that taken at the Appellate Division, plaintiffs have standing to litigate the issues. As real property taxpayers they are personally aggrieved by the taxes levied against their properties under the statute attacked and actions by State and municipal officials under the statute.” The dissenting opinion, after declaring that ‘ ‘ if due respect is paid to stare decisis, the action should not be entertained ” (p. 954), then considered the constitutional issues on the merits and found the plaintiffs’ position “ groundless on the merits ” (p. 956).
Before approaching deduction of principles, in the background of the Court of Appeals ’ decisions, two things should be noticed. First, the same article III of the Constitution, section 5, dealing with reapportionment, gives the right to any citizen to sue in the Supreme Court for review of such action by the Legislature or any other body. But no similar right to review has been bestowed as to executive or legislative discretionary per *929 formance, even when section 14 was last amended in 1938. But, on the other hand, supporting citizen intervention, is the landmark decision in Flast v. Cohen (392 U. S. 83), decided in June, 1968, after Donohue (17 N Y 2d 390, supra), but before Posner (26 N Y 2d 970, supra). There, Federal taxpayers sued to enjoin expenditures of funds under titles I and II of the Elementary and Secondary Education Act of 1965 (79 U. S. Stat. 27; IT. S. Code, tit. 20, §§ 241a et seq.; 821 et seq. [1964 ed., Supp. II]). They alleged that these funds were being used to finance instruction and to purchase educational materials in religious schools in contravention of the Establishment and Free Exercise Clauses of the First Amendment to the Federal Constitution modifying Frothingham, v. Mellon (262 U. S. 447), which held that a Federal taxpayer had no standing to challenge the constitutionality of a congressional appropriation to reduce infant and maternity mortality because his contribution to Federal revenues was too small and remote to satisfy the standing requirements, the Supreme Court, in an 8 to 1 vote, held that the plaintiffs had standing to challenge the constitutionality of the expenditures on the ground of violátion of the Establishment Clause.
Chief Justice Warren, writing for a majority of five in Flast v. Cohen (392 U. S. 83, supra), declared that standing requires that the party seeking relief have ‘ ‘ ‘ such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.’ Baker v. Carr, 369 U. S. 186, 204 (1962) ” (p. 99). Standing is present only when the circumstances of the particular case show that the taxpayer has a personal stake in the outcome of the litigation. That personal stake requires a connection between the interest asserted and the alleged constitutional violation, and in addition the taxpayer must show that the congressional action challenged contravenes specific constitutional limitations imposed on the taxing and spending powers.
While refraining here from discussing the various implications and ramifications of the Flast (supra) majority opinion, yet it is meet to note that while the more than a score of commentators on the decision applaud the re-examination and modification of Frothingham v. Mellon (supra) they are almost unanimous in their criticism of the conclusions that taxpayers lack standing to challenge expenditures under nonspecific clauses of the Federal Constitution. (See, e.g., Davis, Standing: Tax *930 payers and Others, 35 U. Chi. L. Rev. 601; Henkin, The Supreme Court 1967 Term, Foreword, 63, 72; Berger, Standing to Sue in Public Actions: Is It a Constitutional Requirement?, 78 Yale L. J. 816.) Moreover, it is no longer literally accurate to equate the Federal rule with that reiterated in St. Clair v. Yonkers Raceway (13 N Y 2d 72, supra), as was stated in the majority opinion.
In this background of preceding authorities certain principles are deducible and certain observations are permissible. A citizen taxpayer who is personally aggrieved and directly affected, who can show a direct or personal injury to himself, has standing to challenge the constitutionality of a State statute. The rule still remains in this jurisdiction — notwithstanding the opposing view of three Judges of the Court of Appeals and a distinct contrary view elsewhere — that absent personal aggrievement a citizen taxpayer lacks the capacity to challenge the validity of a statute. Nevertheless, in at least three non-fiscal cases the Court of Appeals refused to dismiss complaints for lack of standing even though the interests of the plaintiffs seemed remote. Finally, it may be noted that the cases considered above did not involve the question whether constitutional requirements for legislative procedure had been met in the enactment of the challenged legislation (cf. Franklin Nat. Bank v. Clark, 26 Misc 2d 724, mot. to vacate decision den. 31 Mise 2d 185). But whether this is a distinction with a difference, on the question of standing, need not presently be decided.
Because of the state of decisional law in this State with what I believe to be a discernible outlook for a liberalization of the doctrine of standing; because of the variety of interests represented by the various plaintiffs here, some of whom appear to be directly affected by some of the laws under attack; and because of the overriding importance of the main issues involved —legislative and executive discretion — I now decide that the plaintiffs have standing to bring this action because it concerns constitutional requirement — whether by clear provision, by interpretation or by construction. I accept and agree with the observation of Hopkixs, J., in Bloom v. Mayor of City of New York (35 A D 2d 92, 96, affd. 28 N Y 2d 952, supra): “It is not without some significance that unless this action is sustained no way would be open to test the validity of the defendants’ proceedings. It is scarcely to be expected that the public officials would raise the issue of the legality of their own acts. But to allow them by such conduct to put themselves beyond judicial scrutiny verges on the failure of due process *931 (cf. Long Is. Coll. Hosp. v. Catherwood, 23 N Y 2d 20, 36, n. 3).”
As noted, the direct question here involves the interpretation and application of section 14 of article III of the State Constitution already quoted above, especially that portion providing for a certificate of necessity from the Governor setting forth “ the facts which in his opinion necessitate an immediate vote thereon Originally as it appeared in the Constitution of 1894 (art. Ill, § 15; see People ex rel. Hatch v. Reardon, 184 N. Y. 431, 439) the Governor’s certificate alone, with no need to state any facts, was all that was required. In the Constitution of 1938 (art. Ill, § 14), the present additional language was added, providing that the Governor shall certify ‘ ‘ the facts which in his opinion necessitate an immediate vote thereon ”.
Both in the 1915 and 1938 Constitutional Conventions there was much criticism directed at the indiscriminate use of messages of necessity, especially in the hectic last few days of the legislative session (Rev. Record, Constitutional Convention of State of N. Y., 1915, Yol. 1, pp. 766-775, 818-826; Rev. Record, Constitutional Convention of State of N. Y., 1938, Vol. 2, pp. 975‘-982, 1435-1437). In the 1938 convention, Senator Fearon, an active sponsor of the change, commented: “ The committee felt that it wasn’t the immediate passage of the bill that was the important thing, because in forty or fifty per cent of the cases where the measure was certified, the Governor vetoed the bill.” (Rev. Rec., p. 975.)
Later in the convention came Senator Fearon’s precatory comment at page 1435: “It provides first that instead of the Governor certifying as to the necessity for the immediate pass-sage, which is exactly what he does, any Governor does: He has a printed form in which he certifies to the necessity for the immediate passage; under the new proposal the Governor will certify the facts which, in his opinion, necessitate an immediate vote on the bill, not necessarily its passage, but an immediate consideration of it and an immediate vote upon it. And it is the hope of the members of the committee that if the Governor is required to certify facts which in his opinion constitute an emergency, it will not fall into a pro forma signing of a printed message which reads, in effect, ‘ I hereby certify the necessity for the immediate passage of bill No. so and so.’ ”
It appears that many of the messages currently issuing contain the following pro forma language: ‘1 Because the bill in its final form has not been on your desks three calendar legislative days the Leaders of your Honorable bodies have requested this message to permit its immediate consideration;” *932 or, mutatis mutandis, “ Because the bill in its final form has not been on your desks three calendar legislative days, the Leaders of your Honorable bodies have requested this message to permit immediate consideration of the bill prior to your anticipated final adjournment.” Similar messages, as a matter of practice, have been issued by previous Governors since 1938, from Governor Lehman to Governor Rockefeller.
The thrust of the plaintiffs ’ complaint is that these messages of necessity from the Governor do not set forth “ the facts which in his opinion necessitate an immediate vote ’ ’. They urge that the purpose and spirit of the 1938 change would be frustrated if the Governor’s opinion per se were to be deemed sufficient and the ills which led to the 1938 change would be perpetuated.
In resolving this important yet delicate issue the basic guide to decision is the recent disposition of the Court of Appeals in Sullivan County Harness Racing Assn. v. New York State Off-Track Pari-Mutuel Betting Comm. (30 N Y 2d 207). While the court split 4 to 3 on the substantive issue of the constitutionality of the New York State Off-Track Pari-Mutuel Betting Law and the New York City Off-Track Betting Corporation Law (L. 1970, ehs. 143 and 144), it was unanimous in rejecting the challenge, the same as here, based upon alleged noncompliance with section 14 of article III of the Constitution. The majority opinion of Judge Bergan went into it at length (see immediately below), while the dissenting opinion of Judge Burke, joined in by Fuld, Ch. J., and Gibson, J., on this asserted phase of constitutional invalidity, held that it had no merit (p. 224).
Because of its pertinency, I quote in full from that portion of Judge Bergan’s majority opinion which deals with the sufficiency of Governor Rockefeller’s message of necessity (pp. 219-220): “An additional point of constitutional infirmity in the 1970 statutes argued by the appellant corporations is that the Governor’s message to the Legislature of April 19, 1970, which accelerated the vote on the off-track betting proposal, did not comply with article III (§ 14) of the Constitution. This provision postpones the enactment of bills for at least three days after copies are in final printed form on legislative desks.
‘ ‘ That time lapse may be cut down, and consideration advanced, if the Governor certifies to the Legislature ‘ the facts which in his opinion necessitate an immediate vote thereon ’. The Governor’s certificate of April 19 described the general purposes of the bill to establish a system of off-track pari-mutuel betting and certified that because the bill had not been on the legislative desk three days ‘ the Leaders of your Honorable *933 bodies have requested this message to permit immediate consideration of the bill prior to your anticipated final adjournment 7.
‘ ‘ Although the proposal had been introduced in the Senate April 18 and adjournment actually occurred on April 22, the bill could not reasonably have been in final printed form for three days before adjournment and the imminence of adjournment on April 19, when the message was sent, was sufficient to justify the certificate for the reasons stated by the Governor. It was passed by the Senate on April 19, the date of the certificate, and by the Assembly the following day.
“ The time sequence shows the bill could not have been considered by the Legislature unless the certificate had been given and the public interest in its consideration is made conclusive by the fact the Legislature decided not only to consider it but to pass it. The request by the leaders of both houses to the Governor for a certificate shortening the time to permit consideration of the bill before adjornment was to make legislative action possible.

“ This is a compliance in terms and in spirit with article III (§ 14). It js the Governor who must express the opinion that an immediate vote is desirable. The facts on which he forms that opinion must satisfy him. The facts supporting his opinion of April 19, are rational and reasonable. If the proposal is to be considered a certificate must be given. This on its face is a sufficient compliance with the Constitution.

“ The Legislature could still say the time for consideration was too short. It did not say that, but accepting the Governor’s certificate and considering the proposal in the time available, it passed it.
“ Normally a court should not intervene to nullify an act of the Governor addressed to legislative action which literally and reasonably conforms with constitutional requirements (cf. People ex rel. Hatch v. Reardon, 184 N. Y. 431; People ex rel. Broderick v. Morton, 156 N. Y. 136).” (Emphasis supplied.)
While Sullivan County {supra) deals with a message of necessity issued a few days before “ anticipated final adjournment ’ ’, and hence is an authoritative holding at the least that “ anticipated final adjournment ” is a sufficiently stated “ fact ” to justify an immediate vote, the quoted portion of the opinion can be read broadly to- support the Governor’s action in all cases where he issues messages of necessity or narrowly to cover only the area of anticipated final adjournment. The sentence in the opinion that “ This is a compliance in terms and in spirit with *934 article III (§ 14) ”, following reference to the time sequence prior to adjournment, supports the narrow view. However, the next two sentences, especially the latter of the two, indicate that it is the Governor alone who determines the sufficiency of the facts. Recalling Senator Fearon’s remarks at the 1938 Constitutional Convention, the Governor, while concurring when he issues his certificate of the necessity for accelerated legislative consideration, in no way commits himself to his ultimate approval of the particular legislation.
But the succeeding reference in Judge Bergan’s opinion to “ the facts ” as “ rational and reasonable ” suggests the possibility of judicial review in some situations. The concluding sentences of the paragraph, viewing the issuance of “ a certificate ” as “on its face a sufficient compliance with the Constitution ”, suggests a broad reading. The policy consideration set forth in the final paragraph in the above quotation likewise indicates a judicial approach of nonintervention, an avoidance of judicial intrusion; nevertheless, the opening word “normally ” suggests the possibility of judicial reviewability. Finally, Judge Bergau’s citation of People ex rel. Hatch v. Reardon (184 N. Y. 431), and especially People ex rel. Broderick, v. Morton (156 N. Y. 136), even though preceded by the comparing symbol “ Cf. ’ ’, suggests a course of judicial self-limitation or self-restraint, a policy ordinarily of “ hands-off ”.
Since the Sullivan (30 N Y 2d 207, supra) holding is subject to either the broad or the narrow view, forecasting the ultimate view is precarious for a lower court.
Recognizing the dominant doctrine of separation of powers with concomitant adherence to judicial self-limitation and absent any expressed criterion in the State Constitution defining the phrase “the facts ”, which in the Governor’s opinion require his message of necessity, I hold, on the authority of Sullivan County {supra), that their sufficiency is unassailable.
The motions to dismiss the complaint for lack of standing to sue are denied, but it is declared that the messages of the Governor in the forms used by him are constitutionally sufficient and the related legislation was validly enacted.