[828 NE2d 975, 796 NYS2d 18]

SCOTT MAYBEE, Doing Business as SMOKE SIGNALS, Appellant, v STATE OF NEW YORK et al., Respondents.

Argued March 21, 2005; decided April 28, 2005

### POINTS OF COUNSEL

*Margaret A. Murphy,* Buffalo, and *Colucci & Gallaher, P.C.* (*Joseph F. Crangle* of counsel) for appellant. I. On its face, a message of necessity must comply with the mandates of article III, § 14 of the Constitution of the State of New York. (*People ex rel. Hatch v Reardon,* 184 NY 431, 204 US 152; *Franklin Natl. Bank of Long Is. v Clark,* 26 Misc 2d 724; *Norwick v Rockefeller,* 70 Misc 2d 923, 40 AD2d 956, 33 NY2d 537; *Finger Lakes Racing Assn. v New York State Off-Track Pari-Mutuel Betting Commn.,* 30 NY2d 207.) II. The Governor's message states the necessity for the passage, but not the necessity for an immediate vote. (*Finger Lakes Racing Assn. v New York State Off-Track Pari-Mutuel Betting Commn.,* 30 NY2d 207; *Norwick v Rockefeller,* 70 Misc 2d 923, 40 AD2d 956, 33 NY2d 537; *Matter of Joslin v Regan,* 63 AD2d 466, 48 NY2d 746; *Matter of King v Cuomo,* 81 NY2d 247; *Matter of Schulz v Silver,* 212 AD2d 293.)

*Eliot Spitzer, Attorney General,* Albany (*Robert M. Goldfarb, Caitlin J. Halligan, Daniel Smirlock* and *Peter H. Schiff* of counsel), for respondents. I. The Governor's message of necessity was constitutionally sufficient. (*Clark v Cuomo,* 66 NY2d 185; *Matter of New York State Inspection, Sec. & Law Enforcement Empls., Dist. Council 82, AFSCME, AFL-CIO v Cuomo,* 64 NY2d 233; *Matter of Johnson v Pataki,* 91 NY2d 214; *Matter of King v Cuomo,* 81 NY2d 247; *Settle v Van Evrea,* 49 NY 280; *Finger Lakes Racing Assn. v New York State Off-Track Pari-Mutuel Betting Commn.,* 30 NY2d 207, 409 US 1031; *Norwick v Rockefeller,* 70 Misc 2d 923, 40 AD2d 956, 33 NY2d 537; *People ex rel. Hatch v Reardon,* 184 NY 431, 204 US 152; *Dalton v Pataki,* 11 AD3d 62; *Browne v City of New York,* 213 App Div 206, 241 NY 96.) II. In the event this Court should find the message of necessity insufficient, any relief should be prospective only. (*Matter of King v Cuomo,* 81 NY2d 247; *Matter of McCann v Scaduto,* 71 NY2d 164; *Matter of Campaign for Fiscal Equity v Marino,* 87 NY2d 235.)

### OPINION OF THE COURT

R.S. SMITH, J.

Article III, § 14 of the State Constitution provides that no bill shall be passed unless it has been printed and on the desks of

the members of the Legislature for three days prior to passage or "unless the governor . . . shall have certified . . . the facts which in his or her opinion necessitate an immediate vote thereon." Plaintiff claims that the bill at issue here was not validly passed because the "facts" that the Governor "certified" do not support the conclusion that "an immediate vote" was necessary. We hold that, as long as the Governor's certificate contains some factual statements, the sufficiency of the stated facts to support the Governor's conclusion may not be challenged.

## Facts and Procedural History

Senate Bill S 8177 of 2000, a bill to regulate certain sales and shipments of cigarettes, was first printed on June 14, 2000. On the same day, the Governor sent to both the Senate and Assembly a "message of necessity" that contained the following language:

> "The facts necessitating an immediate vote on the bill are as follows:

> "This bill is necessary to amend the public health law in relation to the shipment and transportation of cigarettes to any person not licensed as a cigarette tax agent or wholesale dealer. This bill also amends the tax law and the administrative code of the City of New York with respect to imposing and enhancing civil and criminal penalties for unlawfully possessing, selling and transporting cigarettes.

> "Because the bill has not been on your desks in final form for three calendar legislative days, this message is necessary to permit its immediate consideration."

The bill was passed by the Senate on the same day it was printed and by the Assembly on the following day. Plaintiff, the owner of a business that sells cigarettes, seeks a declaratory judgment that the bill was not validly enacted. Supreme Court dismissed the complaint for failure to state a cause of action, and plaintiff appeals directly to this Court pursuant to CPLR 5601 (b) (2). We affirm.

## Discussion

Article III, § 14 of the Constitution provides in relevant part:

> "No bill shall be passed or become a law unless it

shall have been printed and upon the desks of the members, in its final form, at least three calendar legislative days prior to its final passage, unless the governor, or the acting governor, shall have certified, under his or her hand and the seal of the state, the facts which in his or her opinion necessitate an immediate vote thereon, in which case it must nevertheless be upon the desks of the members in final form, not necessarily printed, before its final passage . . . ."

In *Finger Lakes Racing Assn. v New York State Off-Track Pari-Mutuel Betting Commn.* (30 NY2d 207 [1972]) and *Norwick v Rockefeller* (33 NY2d 537 [1973]) we rejected claims that the facts stated in a Governor's certificates were insufficient to comply with article III, § 14. While *Finger Lakes* may have left open the possibility that some statements of facts could be found inadequate, *Norwick* did not. We now make explicit what our affirmance without opinion in *Norwick* implied: the sufficiency of the facts stated by the Governor in a certificate of necessity is not subject to judicial review.

The certificate in *Finger Lakes*, as we summarized it, "described the general purposes of the bill . . . and certified that because the bill had not been on the legislative desks three days 'the Leaders of your Honorable bodies have requested this message to permit immediate consideration of the bill prior to your anticipated final adjournment' " (30 NY2d at 219). Noting that adjournment was imminent and "the bill could not reasonably have been in final printed form for three days before adjournment," we held that the Governor's certificate was "a compliance in terms and in spirit" with article III, § 14 (*id.*). Our next words seemed to imply that it was for the Governor to decide on the sufficiency of the facts: "It is the Governor who must express the opinion that an immediate vote is desirable. The facts on which he forms that opinion must satisfy him." (*Id.*) We added, however: "The facts supporting his opinion . . . are rational and reasonable" (*id.*)—arguably suggesting that a certificate that was not "rational and reasonable" would be insufficient.

The apparent ambiguity in *Finger Lakes* was resolved in *Norwick*. There, the plaintiff challenged "all laws enacted on messages of necessity during the 1971 regular legislative session" (*Norwick v Rockefeller*, 70 Misc 2d 923, 925 [Sup Ct, NY County 1972], *affd without op* 40 AD2d 956 [1st Dept 1972], *affd without*

*op* 33 NY2d 537 [1973]). Supreme Court (Saypol, J.) summarized certain of the disputed certificates as follows:

> "It appears that many of the messages currently issuing contain the following *pro forma* language: 'Because the bill in its final form has not been on your desks three calendar legislative days the Leaders of your Honorable bodies have requested this message to permit its immediate consideration;' or, *mutatis mutandis*, 'Because the bill in its final form has not been on your desks three calendar legislative days, the Leaders of your Honorable bodies have requested this message to permit immediate consideration of the bill prior to your anticipated final adjournment.' " (70 Misc 2d at 931-932.)

Justice Saypol analyzed our decision in *Finger Lakes*, and observed that, as we mentioned above, the key language in *Finger Lakes* "can be read broadly to support the Governor's action in all cases where he issues messages of necessity" or more narrowly (*id.* at 933). Justice Saypol, referring to "the dominant doctrine of separation of powers with concomitant adherence to judicial self-limitation," chose the broader reading. He held that the sufficiency of the "facts" stated by the Governor in a message of necessity "is unassailable" (*id.* at 934).

By affirming without opinion in *Norwick* we endorsed the result Justice Saypol reached. In this case, endorsement of the result implies endorsement of the critical element in his rationale: that the sufficiency of the facts stated by the Governor as necessitating expedited consideration of a bill may not be challenged. Some of the certificates upheld in *Norwick* said only that the bill in question had not been on the legislators' desks for three days and that "the Leaders of your Honorable bodies have requested this message to permit its immediate consideration." If these facts are sufficient under the Constitution, it follows that any facts will be, as long as they satisfy the Governor.

Thus we conclude that the question presented in this case is already answered by *Norwick*. But if we were deciding the question afresh, we would decide it the same way. The Constitution on its face makes the Governor's judgment of the facts determinative; he or she is to state facts that "in his or her opinion" necessitate prompt action. Whether a court's opinion is or is not the same as the Governor's does not matter.

Some contexts might justify reading into a statute or constitutional provision a requirement that a public official's "opinion" be reasonable. Here, however, there are several reasons for giving complete deference to the Governor's views: The Governor is far better equipped than the courts to assess the need for speedy passage of a bill; the very need for haste that prompts him or her to issue a certificate may make it difficult to prepare a detailed and persuasive statement of the reasons for it; the Legislature has its own remedy for an inadequate certificate, since if it does not think the Governor's reasons are good ones, it is not required to act in fewer than three days—or even to consider the bill at all; and the consequences of judicial second-guessing of the Governor's and the Legislature's choice to expedite passage can be draconian. If we accepted plaintiff's argument here, any statute, no matter how important to the state, would have to be thrown out by the courts if the facts stated in the certificate of necessity that permitted its prompt passage were found insufficient.

Plaintiff acknowledges that both precedent and logic support giving much deference to the Governor's statements of facts. Plaintiff argues, however, that the deference should be less than total. Even in *Norwick*, plaintiff urges, the certificate of necessity contained a fact supporting a prompt vote—the fact that the leaders of the Legislature had asked for one. Here, plaintiff says, the Governor's certificate states only reasons for passing the bill, not for voting on it promptly. We are unpersuaded by the distinction. A good reason for action can be, in some circumstances, in itself a good reason for acting promptly, and it is for the Governor and not for us to decide when that is true. And in any event, we do not think there is a significant difference between facts that support the Governor's conclusion only weakly and facts that do not support it at all. Under *Norwick*, the legislative leaders' wish for expedition is a sufficient fact—as would be, presumably, the Governor's own wish to move the bill quickly. No useful purpose is served by trying to draw a line between such facts and those stated in the certificate at issue here; on either side of the line are factual statements that may be called "pro forma," but are sufficient under the Constitution.

The concurring opinion argues that our ruling fails to honor the "long and substantial history" of article III, § 14 (concurring op at 422). But this argument is based heavily on the history of a provision proposed in 1915 that would have abolished cer-

tificates of necessity entirely—a provision that was never adopted. The abortive 1915 proposal is relevant here, if at all, only as an indication of what the voters decided not to do. Our holding that the Governor's stated reasons for seeking expedition are unchallengeable is consistent with the history of the constitutional provision that actually was enacted, so far as that history throws light on the authors' expectations.

From 1894 until the present article III, § 14 was adopted in 1938, the three-day waiting period for the passage of a bill could be dispensed with if the Governor "certified to the necessity of its immediate passage." (1894 NY Const, art III, § 15.) The present version differs by requiring the Governor to certify not only the necessity for prompt action, but the facts that give rise to the necessity. A comment at the 1938 Constitutional Convention by George Fearon, one of the delegates who sponsored the change, shows that he understood that the effectiveness of this new requirement would depend on the Governor's cooperation. Fearon said:

> "it is the *hope* of the members of the committee that if the Governor is required to certify facts which in his opinion constitute an emergency, it will not fall into a pro forma signing of a printed message which reads, in effect, 'I hereby certify the necessity for the immediate passage of bill No. so and so.' " (2 Rev Record, 1938 NY Constitutional Convention, at 1435 [emphasis added].)

The key word is "hope"; Fearon hoped the Governor's certificates would be more than pro forma, but he evidently did not expect the courts to invalidate the legislation if his hope was disappointed. He presumably recognized, as do we, that invalidation of statutes on grounds like this would do less good than harm.

Accordingly, the judgment of Supreme Court should be affirmed, with costs.

Chief Judge KAYE (concurring in result). I begin, as do my Colleagues, with the clear words of the New York State Constitution. That is the appropriate place to begin, as the Court is obliged to honor the Constitution.

> "No bill shall be passed or become a law unless it shall have been printed and upon the desks of the members, in its final form, at least three calendar

legislative days prior to its final passage, unless the governor, or the acting governor, shall have certified, under his or her hand and the seal of the state, *the facts which in his or her opinion necessitate an immediate vote thereon*, in which case it must nevertheless be upon the desks of the members in final form, not necessarily printed, before its final passage" (NY Const, art III, § 14 [emphasis added]).

Today, however, the Court honors neither the words, nor the surprisingly long and substantial history, of this constitutional provision.

In an effort to break with past practice and ensure that both legislators and the public would know the content of bills being voted on by the Legislature, the Constitution of 1894 required—for the first time—that bills be printed and distributed to the members of the Legislature at least three days before final passage (*see* 1894 NY Const, art III, § 15). The objects of this reform were to prevent hasty and careless legislation, to prohibit last-minute amendments—deemed to be "one of the principal evils in the way of legislation" (1 Revised Rec, 1894 NY Constitutional Convention, at 902)—and to secure public comment prior to passage (*see People ex rel. Hatch v Reardon*, 184 NY 431, 439 [1906]; *Matter of Schneider v Rockefeller*, 31 NY2d 420, 434 [1972]). Nevertheless, because of grave doubt expressed as to whether it would be possible to print bills and get them on the desks of the members so quickly, as well as fears that public emergencies might require rapid legislation, an exception was adopted for those instances in which the Governor certified the necessity of immediate passage of the bill.

At both the Constitutional Convention of 1915 and the Constitutional Convention of 1938, the indiscriminate use of gubernatorial messages of necessity was much criticized (*see e.g.* 1 Revised Rec, 1915 NY Constitutional Convention, at 767 ["It was intended, beyond a doubt, that these messages should be used only in the case of a real public emergency and it was not intended . . . that they should be used as a dose of strychnine for legislation which was in its last gasps, on the last day or two of the legislative session, and which had not received proper attention earlier in the session. . . . I think it may well be doubted whether there ever has been, since 1894, a real emergency where it was actually necessary to pass a bill within three days of its introduction"]; *id.* at 823 ["When this matter was brought before the Convention of 1894 . . . the amendment was

proposed for the purpose of preventing hasty and ill-considered legislation. . . . It never entered the head of anybody in that Convention that this . . . (message of) necessity . . . should be resorted to for the purpose of defeating the very object which we had in view in incorporating this provision in the Constitution so as to require at least three days for deliberation."]; 2 Revised Rec, 1938 NY Constitutional Convention, at 975).

The 1915 Constitution, not adopted by the electorate, proposed to eliminate the exception for such messages altogether (*see e.g.* 1 Revised Rec, 1915 NY Constitutional Convention, at 824 ["I do not think among the important things that we have to do, that there is anything more important than the elimination of this so-called emergency message. Nothing can be done which will tend to secure more deliberative legislation in the future than the doing away with this message."]; *id.* ["I have such a strong feeling upon the subject that I believe, if this Convention did nothing more than to take out this emergency message, it would have rendered a very great service to the State."]).

The framers of the 1938 Constitution (our current Constitution) similarly sought to decrease the frequency of these messages—the use of which was especially prevalent in the hectic last few days of each legislative session—by amending the Constitution to its present form, to require that the Governor accompany a message of necessity with a certification of "the facts which in his opinion necessitate an immediate vote thereon" (*see* 1938 NY Const, art III, § 14).

In explaining the intent of this amendment, the sponsor explained:

> "It provides first that instead of the Governor certifying as to the necessity for the immediate passage, which is exactly what he does, any Governor does: He has a printed form in which he certifies to the necessity for the immediate passage; under the new proposal the Governor will certify the facts which, in his opinion, necessitate an immediate vote on the bill, not necessarily its passage, but an immediate consideration of it and an immediate vote upon it. And it is the hope of the members of the committee that if the Governor is required to certify facts which in his opinion constitute an emergency, it will not fall into a pro forma signing of a printed

message which reads, in effect, 'I hereby certify the necessity for the immediate passage of bill No. so and so' " (2 Revised Rec, 1938 NY Constitutional Convention, at 1435).

The purpose of the amendment was thus to slow the emergency enactment process, prohibit last-minute amendments, force legislators to bring bills to a vote earlier in the legislative term, and reduce the number of bills requiring an immediate vote at the end of the term (*see* 2 Revised Rec, 1938 NY Constitutional Convention, at 975, 980).

In contravention of the clear words and intent of the constitutional framers not only in 1894 and 1915 but also in 1938, the Court today endorses the pro forma issuance of messages of necessity *without limitation*, concluding that by use of the word "hope," the framers recognized that the amendment would in fact have no effect. The common thread woven through 44 years of constitutional history is that messages of necessity were meant to be the exception, not the rule.

I cannot agree that the failure of the Governor to certify facts which in his or her opinion necessitate an immediate vote on the bill when issuing a message of necessity is of no consequence. Rather, when the constitutional command is clear, it may not be waived even with the concurrence of the Legislature.

Here, the facts certified by the Governor stated simply that the bill was

> "necessary to amend the public health law in relation to the shipment and transportation of cigarettes to any person not licensed as a cigarette tax agent or wholesale dealer. This bill also amends the tax law and the administrative code of the City of New York with respect to imposing and enhancing civil and criminal penalties for unlawfully possessing, selling and transporting cigarettes."

These facts do nothing more than set forth the content of the bill itself and are in no way relevant to the necessity of immediate consideration.* To be sure, the facts are relevant to the utility of eventual adoption of the bill—that is, by setting forth the proposed provisions of law, including that penalties would be enhanced for dealing in black-market cigarettes, the message

---

* The message also contained the truism that such a message was needed in order to waive the otherwise constitutionally mandated three-day waiting period.

perhaps made the case for *ultimate* passage. But that is not the constitutional test.

In both *Finger Lakes Racing Assn. v New York State Off-Track Pari-Mutuel Betting Commn.* (30 NY2d 207, 219-220 [1972], *appeal dismissed* 409 US 1031 [1972]), and *Matter of Joslin v Regan* (48 NY2d 746 [1979], *affg* 63 AD2d 466, 468-469 [4th Dept 1978]), we rejected challenges to gubernatorial messages of necessity premised on claims that the reasons given by the Governor were not good enough. Of course, as the Constitution makes clear, the facts must justify immediate consideration in the Governor's opinion. That being so, the Court will not analyze whether facts which pertain to a need for expeditiousness are sufficient to justify the asserted need, as long as they are sufficient to satisfy the Governor. The Governor, having stated such facts, is the final arbiter of their quality, and the Court will not question that judgment.

Thus, in *Finger Lakes*, we upheld a message setting forth the Governor's opinion that expedited consideration was necessary to permit consideration of the bill before the Legislature's anticipated final adjournment. Similarly, in *Joslin*, we sustained a message—sent on March 31, 1977—providing that "[e]nactment of this bill is necessary in connection with the Budget for the 1977-78 Fiscal Year, which begins April 1" (63 AD2d at 469). But when the Governor states no facts at all that relate to timing, the Constitution has been violated, both "in terms and in spirit" (*Finger Lakes*, 30 NY2d at 219).

The Court relies on *Norwick v Rockefeller* (70 Misc 2d 923, 934 [Sup Ct, NY County 1972]) for the proposition that a message of necessity "may not be challenged" (majority op at 419). There, the messages at issue provided simply that "[b]ecause the bill in its final form has not been on your desks three calendar legislative days the Leaders of your Honorable bodies have requested this message to permit its immediate consideration" (70 Misc 2d at 931). The *Norwick* trial court—in analyzing *Finger Lakes*—expressed the view that our precedent could be read either narrowly (to set forth a rule pertaining only to messages containing facts plainly relating to the need for speed, such as the imminency of a final legislative adjournment) or broadly (to mean that messages of necessity are always beyond judicial review) (70 Misc 2d at 933-934). Stating that to forecast which reading an appellate court would ultimately endorse was "precarious" for a lower court, the trial court assumed the broader interpretation (*id.* at 934). The Appellate Division

simply affirmed (40 AD2d 956 [1st Dept 1972]), and this Court affirmed "[n]o opinion" (33 NY2d 537, 538 [1973]), declining an opportunity to affirm on the reasoning of the trial court, as we have done innumerable times when that is our intention. *"[S]tare decisis* does not spring full-grown from a 'precedent' but from precedents which reflect principle and doctrine rationally evolved" (*People v Hobson*, 39 NY2d 479, 488 [1976]).

To sanction the instant message is to read the provision out of the Constitution. This, not the Governor, the Legislature or this Court—nor all three together—is empowered to do.

I concur in the result, however, because—although the very purpose of the amendment at issue here was to avoid pro forma messages of necessity—it has nevertheless become the practice of government that messages like the one before us have been routinely used. To strike or put in doubt legislation enacted on such messages would lead to great unsettlement. Thus, while I conclude that the instant message failed to comply with the constitutional mandate of article III, § 14, I would give this ruling prospective effect only (*see Matter of King v Cuomo*, 81 NY2d 247, 256-257 [1993] [although bicameral recall practice used by Legislature to reacquire bill from Governor's desk found unconstitutional, relief was prospective because of longstanding recall practice and "disorder and confusion" retroactive ruling or ruling with resuscitative effect would produce]; *Matter of Campaign for Fiscal Equity v Marino*, 87 NY2d 235, 239 [1995] [although practice of withholding bills passed by both houses of Legislature from Governor violated State Constitution, retroactive ruling was not warranted]).

Finally, I note that article III, § 14 of the Constitution does not ask much of the Governor when a message of necessity is in order. Any facts which in the Governor's opinion necessitate an immediate vote will satisfy the constitutional test. I therefore hope that, despite the Court's ruling today, the Governor will in the future take the simple step of including in any message of necessity the minimal statement of facts that compliance with the Constitution requires.

Judges Rosenblatt, Graffeo and Read concur with Judge R.S. Smith; Chief Judge Kaye concurs in result in a separate opinion in which Judges G.B. Smith and Ciparick concur.

Judgment affirmed, with costs.