In the Matter of NORMAN E. JOSLIN, as Executor of MADELINE H. NOE, Deceased, Appellant, v WILLIAM J. REGAN, as Surrogate of Erie County, et al., Respondents.

Fourth Department, July 13, 1978

468

APPEARANCES OF COUNSEL

*Moot, Sprague, Marcy, Landy, Fernbach & Smythe (Norman E. Joslin, pro se,* of counsel), for appellant.

*Louis J. Lefkowitz, Attorney-General (James Kennedy* and *Ruth Kessler Toch* of counsel), for respondents.

*Allan R. Lipman* for Erie Bar Association, *amicus curiae.*

**OPINION OF THE COURT**

DILLON, J.

We are here asked to decide the legality and constitutionality of chapter 33 of the Laws of 1977 which amended SCPA 2402 relating to the amount of fees to be paid in Surrogate's Court proceedings. The effect of the bill is to establish a single, State-wide fee schedule by increasing those fees previously charged in counties outside the City of New York to the level which has been in effect in counties within the City of New York for several years (see L 1972, ch 733). The fees are payable in advance (SCPA 2401, subd 2) upon the filing of a petition commencing, *inter alia,* a probate, administration, tax or accounting proceeding in Surrogate's Court (SCPA 2402).

In upholding the constitutionality of the legislation, Special Term found that the assessments are fees, not taxes; that the revenue generated therefrom in Erie County is to be used to offset the costs of operating the unified court system of the State (NY Const, art VI, § 1); and that the legislation thus has a rational basis and represents a proper exercise of the legislative function. We affirm.

On March 31, 1977, at the request of the leaders of the Senate and Assembly, the Governor sent to the Legislature a message of necessity (NY Const, art III, § 14)* for an immediate vote on a bill which included the amendment to SCPA 2402. The bill was promptly passed in both houses and became law on April 1, 1977 following its approval by the Governor.

Petitioner's contention that the message of necessity lacked the requisite factual justification to warrant immediate legislative action is without merit. In certifying the necessity

---

* To the extent relevant, section 14 of article III of the Constitution provides that: "No bill shall be passed or become a law unless it shall have been printed and upon the desks of the members, in its final form, at least three calendar legislative days prior to its final passage, unless the governor, or the acting governor, shall have certified, under his hand and the seal of the state, the facts which in his opinion necessitate an immediate vote thereon".

of an immediate vote, the Governor stated: "Enactment of this bill is necessary in connection with the Budget for the 1977-78 Fiscal Year, which begins April 1."

■■ The courts ordinarily should not intervene to nullify an act of the Governor addressed to legislative action "which literally and reasonably conforms with constitutional requirements" *(Finger Lakes Racing Assn. v New York State Off-Track Pari-Mutuel Betting Comm.,* 30 NY2d 207, 220, remittitur amd 30 NY2d 946, app dsmd 409 US 1031; cf. *Matter of Schneider v Rockefeller,* 31 NY2d 420; *Norwick v Rockefeller,* 70 Misc 2d 923, affd 40 AD2d 956, affd 33 NY2d 537). Viewing the message in light of the assumption by the State of budgetary control over the entire State court system on April 1, 1977 (see L 1976, ch 966; Judiciary Law, § 220), it was reasonable for the Governor to certify that legislative action was imperative in order that court fees would be fixed prior to the beginning of the fiscal year (see *Finger Lakes Racing Assn. v New York State Off-Track Pari-Mutuel Betting Comm., supra,* pp 219-220). Accordingly, we find that the message of necessity complied with section 14 of article III of the Constitution.

■ We also reject petitioner's claim that the newly enacted fee schedule denies citizens the right of access to the Surrogate's Court. The fees are established commensurate with the value of the estate or subject matter of the proceeding (see SCPA 2402, subd 8). Thus it may not be said that due process is offended on the basis that access to the courts is denied to individuals solely because of inability to pay (see *Boddie v Connecticut,* 401 US 371, 374). It is well established that moderate filing fees in judicial matters are constitutionally permissible *(Manes v Goldin,* 400 F Supp 23, affd 423 US 1068; see *United States v Kras,* 409 US 434).

■■ We next address petitioner's final series of contentions regarding the nature of the payments required under section 2402. He argues that such payments are constitutionally proscribed because they constitute *ad valorem* taxes on intangible personal property (NY Const, art XVI, § 3) or, alternatively, that the charges constitute taxes which have been imposed in violation of section 22 of article III of the Constitution requiring that tax laws "distinctly state the tax and the object to which it is to be applied". We agree with Special Term's determination that the filing charges at issue are in fact fees, not taxes, and that the cited constitutional provisions are inapplicable *(People v Fire Assn. of Philadelphia,* 92

NY 311, 327-328; affd 119 US 110; *Sweeney v Cannon,* 23 AD2d 1, mod 30 NY2d 633; cf. *Matter of McPherson,* 104 NY 306).

An *ad valorem* tax is one that is assessed upon the value of property "at a certain rate" *(Ampco Print.-Advertisers' Offset Corp. v City of New York,* 14 NY2d 11, 22; 58 NY Jur Rev, Taxation, § 6) or at a "fixed proportion" (71 Am Jur 2d, State and Local Taxation, § 20). The fees established in section 2402 are broken down into seven categories based upon ranges of estate value varying from $10,000 to $500,000 or more. They are modest in amount and are graded to a maximum of $450, regardless of the value of the estate in excess of $500,-000. The fee schedule is not one based upon a fixed percentage of the value of the estate. If it were, a fee imposed, however labeled, would be susceptible to characterization as a tax (see *Matter of Zoller,* 53 Del 448).

While the label attached to an assessment is not dispositive of its true nature (see *Franklin Soc. for Home Bldg. & Sav. v Bennett,* 282 NY 79, 84), it may generally be said that "taxes are burdens of a pecuniary nature imposed generally upon individuals or property for defraying the cost of governmental functions" *(Matter of Hanson v Griffiths,* 204 Misc 736, 738, affd 283 App Div 662). They are in the strict sense "payable into the general fund of the government to defray customary governmental expenditures" *(People v Brooklyn Garden Apts.,* 283 NY 373, 380-381). On the other hand, fees have been characterized as "a visitation of the costs of special services upon the one who derives a *benefit* from them" *(Jewish Reconstructionist Synagogue of North Shore v Incorporated Vil. of Roslyn Harbor,* 40 NY2d 158, 162; emphasis in original). They are imposed to defray or help defray the cost of particular services *(Matter of Hanson v Griffiths, supra,* p 738). "One of the legitimate purposes of filing fees is 'to make the system self-sustaining and paid for by those who use it rather than by tax revenues drawn from the public at large.' See *United States v. Kras* * * * 409 U.S. at 448" *(Manes v Goldin,* 400 F Supp 23, 30-31, *supra).* The filing charges provided for in section 2402 pertain to specific court proceedings and are payable one time only to the court within which the proceedings are brought, thus presumptively establishing them as fees and not taxes.

Petitioner argues, however, that the fees, particularly those charged in estate tax proceedings, grossly exceed any

cost or expense to the Erie County Surrogate's Court incurred in connection therewith. It is alleged that the "profit" thus realized is used to help defray costs incurred by the entire unified court system which makes the fee schedule, according to petitioner, a general revenue measure or tax. In that regard petitioner offers no evidence with respect to the average cost to the State incurred in connection with Surrogate's Court proceedings (see *Jewish Reconstructionist Synagogue of North Shore v Incorporated Vil. of Roslyn Harbor, supra,* p 163) and surely his submission of the operating budget of the Erie County Surrogate's Court is not evidence of the total cost, including plant facilities and other expenses, necessarily incurred in maintaining that court.

Additionally, in focusing upon the Erie County Surrogate's Court as an isolated unit of the State judicial system, petitioner fails to take into account that such court is but one part of a constitutionally established unified State court system (NY Const, art VI, § 1). Both administrative control (art VI, § 28) and fiscal control (art VI, § 29) over the court system are vested in the State; a unified court budget has been established (Judiciary Law, § 220); all Judges, Justices, nonjudicial officers and employees of the court and court-related agencies are employees of the State; and their salaries, wages, hours and other terms and conditions of their employment are determined in accordance with the provisions of subdivision 6 of section 220 of the Judiciary Law.

The unified budget scheme thus creates a complex budgetary calculus involving a host of fiscal variables including, among others, the total State budgetary allocation for the maintenance of the State court system, the budgetary needs of the individual courts, the contributions by counties, and the total revenues collected from fees and other devices by courts of the State. In light of these and other fiscal considerations, it would be unrealistic to require that court fees may be imposed only to the extent that they directly offset the operating costs of the collecting court which, as already remarked, may not be fully determined solely by review of a court's local budget.

Petitioner's analysis, taken to its logical conclusion, would impose upon the Legislature a requirement that fees be based upon actual costs incurred in a particular proceeding in a specific court. Such a restriction is as impractical as it is unwise since it would put a fiscal straitjacket on governmental

entities and make it all but impossible to implement uniform, State-wide fee schedules.

In matters affecting budgetary policy and the extent to which the cost of providing particular governmental services should be borne by the users of those services, the Legislature is in a far better position than a reviewing court to weigh the variable factors which may have a bearing on the fiscal problem. The power of the Legislature to fix fees in Surrogate's Courts cannot seriously be questioned and if their imposition has a rational basis, the legislative action should not be disturbed. The action complained of here relates to the exercise of legislative power within its lawful scope and as such it is a matter ill-suited to oversight by the judiciary (see *Saxton v Carey,* 44 NY2d 545).

The judgment should be affirmed.

MOULE, J. P., CARDAMONE and SIMONS, JJ., concur; DENMAN, J., not participating.

Judgment unanimously affirmed, without costs.