McCarthy, J.
Appeal from, a judgment of the Supreme Court (McDonough, J.), entered October 4, 2011 in Albany County, which dismissed petitioner’s application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to review a determination of respondent Banking Department imposing an annual general assessment upon petitioner.
Petitioner is a mortgage bank conducting the business of originating mortgage loans in New York. As such, petitioner is licensed and regulated by respondent Banking Department.[1] Pursuant to the Banking Law, the Department charges mortgage banks an annual general assessment to cover the cost of its operations associated with overseeing such entities (see Banking Law § 17 [2]).[2] Mortgage banks must annually file a report with the Department setting forth their income from the previous year, which the Department uses to calculate the annual general assessments. Beginning with the 2010-2011 fiscal year, mortgage banks were instructed to include not only mortgage loan origination income, but also income from secondary market sales of mortgages and mortgage loan servicing activities. This resulted in a significant increase in petitioner’s reported income and, correspondingly, a significant increase in petitioner’s annual general assessment for fiscal year 2010-2011.
Petitioner objected to the determination of its annual general assessment. When the Department upheld the assessment, petitioner commenced this combined proceeding pursuant to CPLR article 78 and action for declaratory judgment challenging the determination. After joinder of issue, Supreme Court dismissed the petition. Petitioner appeals.
The annual general assessment does not constitute an unconstitutional tax (see NY Const, art XVI, § 1). A tax is a charge imposed upon citizens to defray the costs of government services and operations generally, whereas a fee is a charge, *1411 imposed upon certain citizens or entities who use particular services of or obtain benefits from a particular governmental program or agency, to defray the costs of those services or benefits (see Matter of Walton v New York State Dept. of Correctional Servs., 13 NY3d 475, 485 [2009]; New York Tel. Co. v City of Amsterdam, 200 AD2d 315, 318 [1994]). One legitimate purpose of fees is to make an agency self-sustaining so that its operations are paid for by those who use that agency rather than by the public at large through general tax revenues (see Matter of Joslin v Regan, 63 AD2d 466, 470 [1978], affd 48 NY2d 746 [1979]). The annual general assessments here were a fee, not a tax, because the purpose of the assessments was to recover the Department’s expenses related to regulating banks from the banks that are regulated, “not to raise revenue for the support of government generally” (American Assn. of Bioanalysts v Axelrod, 106 AD2d 53, 56 [1985], appeal dismissed 65 NY2d 847 [1985]; see Matter of Joslin v Regan, 63 AD2d at 470-471).[3]
The determination of petitioner’s annual general assessment was not arbitrary or capricious. The statute provides that “[a]ll general expenses, including in addition to the direct costs of personal service, the cost of maintenance and operation . . . and all other direct or indirect costs, incurred in connection with the supervision of any person or entity licensed [or] registered . . . pursuant to this chapter shall be charged to and paid by them in such proportions as the superintendent [of Banking] shall deem just and reasonable” (Banking Law § 17 [2]). Contrary to petitioner’s argument, expenses by ancillary divisions, such as legal services, consumer services and information technology, are incurred by the Department indirectly in connection with the supervision of licensed entities, including mortgage banks (compare Matter of Joslin v Regan, 63 AD2d at 470-472). Thus, the statute permits the Department to recoup those expenses from the banks paying assessments.
Petitioner was not treated differently from other similarly situated entities. The same formula was applied to all mortgage banks. Depository institutions are not similarly situated, as they are subject to federal regulations, federal deposit insurance requirements and equity capital maintenance levels that are not applicable to mortgage banks (see Bower Assoc. v Town of Pleas *1412 ant Val., 2 NY3d 617, 632 [2004]). The Department rationally determined that, considering these differences, it was appropriate to apply a different assessment methodology to depository institutions than the one applied to mortgage banks. Although the Department had not previously included income from mortgage servicing and secondary market activities for purposes of calculating the annual general assessment, it was reasonable to include that income because it is indirectly related to a mortgage bank’s license, and failing to include this income could allow banks to structure transactions so as to avoid paying fees to the Department.
Nevertheless, the Department’s definition of income constitutes a rule that must be formally promulgated. A rule is defined as “the whole or part of each agency statement, regulation or code of general applicability that implements or applies law, or prescribes a fee charged by or paid to an agency or the procedure or practice requirements of any agency” (State Administrative Procedure Act § 102 [2] [a] [i]). The definition excludes “forms and instructions, interpretive statements and statements of general policy which in themselves have no legal effect but are merely explanatory” (State Administrative Procedure Act § 102 [2] [b] [iv]). Blanket requirements and fixed standards that are to be generally applied in the future, regardless of individual circumstances, are rules subject to the State Administrative Procedure Act’s rule-making procedures (see Matter of Alca Indus. v Delaney, 92 NY2d 775, 778 [1999]; Matter of Schwartfigure v Hartnett, 83 NY2d 296, 301 [1994]; Matter of Home Care Assn. of N.Y. State v Dowling, 218 AD2d 126, 128 [1996]).
Petitioner only asserted that the Department created a rule when it implemented its new policy of including secondary market income and income from servicing activities as gross income for purposes of calculating a mortgage bank’s annual general assessment. Petitioner did not challenge, as an unpromulgated rule, the Department’s overall formula or methodology used to calculate annual general assessments; the Department has apparently been applying that methodology for years to determine the annual general assessments for petitioner and others without challenge.[4] Banking Law § 17 (2) contains broad authority for the Department to charge fees to banks, but does not contain any specific methodology or definitions. By redefining income, the Department did more than just explain part of its *1413 methodology or interpret the policy as it already existed; the Department crafted a new aspect of the policy and declared what is considered income for all mortgage banks when they calculate their annual general assessments (see Matter of SLS Residential, Inc. v New York State Off. of Mental Health, 67 AD3d 813, 816 [2009], lv denied 14 NY3d 713 [2010]; Matter of HMI Mech. Sys. v McGowan, 277 AD2d 657, 658 [2000], lv denied 96 NY2d 705 [2001]; compare Lewis v New York State Dept. of Civ. Serv., 60 AD3d 216, 224 [2009], affd 13 NY3d 358 [2009]; Matter of Pharmacists Socy. of State of N.Y., Inc. v Pataki, 58 AD3d 924, 926-927 [2009], lv denied 12 NY3d 710 [2009]). The Department created an expansive definition of income, required all mortgage banks to annually report their income based upon that definition, and rigidly applied the definition across-the-board to calculate annual general assessments for all mortgage banks. It is undisputed that the Department did not follow the procedures for making and filing a rule when it established this definition (see State Administrative Procedure Act §§ 202, 203; see also NY Const, art I\[ § 8). As no rule was properly promulgated, the assessment based on this definition cannot be enforced, it must be annulled and the Department must determine petitioner’s 2010-2011 annual general assessment based on a properly promulgated rule or upon petitioner’s individual facts and circumstances (see Matter of Schwartfigure v Hartnett, 83 NY2d at 302).
Mercure, J.P, Lahtinen, Spain and Garry, JJ., concur. Ordered that the judgment is reversed, on the law, without costs, petition granted to the extent that respondent Banking Department’s 2010-2011 annual general assessment of petitioner is annulled, it is declared that the Banking Department’s methodology for determining the annual general assessment for mortgage banks is not arbitrary or capricious and does not result in an unconstitutional tax, and matter remitted to respondents for further proceedings not inconsistent with this Court’s decision.

. The Banking Department and the Insurance Department merged to form the Department of Financial Services, effective October 3, 2011 (see Financial Services Law § 102; L 2011, ch 62, § 1, part A, § 1).

. Due to the merger of the Banking Department and Insurance Department and the enactment of the Financial Services Law, the Banking Law was repealed, effective April 1, 2012 (see L 2011, ch 62, § 1, part A, § 1).

. Because petitioner sought a declaratory judgment, Supreme Court was required to declare the rights of the parties one way or the other (see CPLR 3001; Stonegate Family Holdings, Inc. v Revolutionary Trails, Inc., Boy Scouts of Am., 73 AD3d 1257, 1262 [2010], lv denied 15 NY3d 715 [2010]). We will therefore issue a declaration in respondents’ favor.

. Based on the limited nature of petitioner’s challenge, we do not express an opinion on whether the overall methodology constitutes a rule under the State Administrative Procedure Act.