*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered: July 9, 2015                519466
_____

In the Matter of ENTERGY
    NUCLEAR INDIAN POINT 2, LLC,
    et al.,
                    Appellants,

        v                                MEMORANDUM AND ORDER

NEW YORK STATE DEPARTMENT OF
    STATE et al.,
                    Respondents.
_____

Calendar Date:  March 23, 2015

Before:  McCarthy, J.P., Egan Jr., Devine and Clark, JJ.

_____

    Nixon Peabody, LLP, Albany (Kevin P. Martin of Goodwin
Procter, LLP, Boston, Massachusetts, admitted pro hac vice), for
appellants.

    Eric T. Schneiderman, Attorney General, Albany (Lisa M.
Burianek of counsel), for respondents.

_____

Clark, J.

    Appeal from a judgment of the Supreme Court (Lynch, J.),
entered November 26, 2013 in Albany County, which dismissed
petitioners' application, in a combined proceeding pursuant to
CPLR article 78 and action for declaratory judgment, to review
respondents' modification to an existing designation of a certain
stretch of the Hudson River as a statutorily protected
environmental habitat.

    Petitioners are the owners and operators of Indian Point
Energy Center, a nuclear power facility.  In July 2012,

respondent Secretary of State, acting upon the recommendation of respondent Department of Environmental Conservation (hereinafter DEC), declared that the statutorily protected significant environmental habitat located at miles 45 through 56 of the Hudson River — a stretch of the river flowing through Dutchess, Orange, Putnam, Rockland and Westchester Counties — would be extended to include miles 40 through 60, resulting in a new statutory habitat known as "Hudson Highlands."  In 1987, the statutory habitat located at miles 45 through 56 was designated as a "significant coastal fish and wildlife habitat area" under 19 NYCRR 602.4 pursuant to the state's implementation (see Executive Law art 42; 19 NYCRR part 602) of a federal statutory scheme designed to encourage coastal states to implement long-term plans to protect coastal zones (see 16 USC § 1455 [b]-[e]; see generally Coastal Zone Management Act of 1972, 16 USC § 1451 et seq., as added by Pub L 92-583, 86 US Stat 1280).  As a result of the habitat expansion,[1] the portion of the Hudson River adjacent to Indian Point — located at approximately mile 42 in the Village of Buchanan, Westchester County — now falls within the Hudson Highlands habitat.

In October 2012, petitioners commenced this combined proceeding pursuant to CPLR article 78 and action for declaratory judgment seeking, among other forms of relief, annulment of the modification that resulted in the Hudson Highlands habitat. Respondents, in conjunction with their answer and certified return, submitted affidavits from scientists employed by DEC and respondent Department of State (hereinafter DOS).  Petitioners then moved for leave to take discovery, asserting that the scientists' affidavits had substantively referenced documents outside of the record, and that Supreme Court should thus allow them to depose those scientists and grant them access to the previously undisclosed documents that the scientists had referenced in their affidavits.  Supreme Court denied petitioners' discovery request in a May 2013 order.  In November

_____

[1]  For the sake of clarity, the July 2012 declaration modified statutory habitats other than the Hudson Highlands habitat.  Petitioners' application, however, does not concern such other modifications.

2013, Supreme Court issued its judgment dismissing the petition. Petitioners now appeal from the November 2013 judgment,[2] and we affirm.

When an agency interprets a regulation that it promulgated, deference is afforded to that agency's interpretive approach unless it is "irrational or unreasonable" (Matter of Gaines v New York State Div. of Hous. & Community Renewal, 90 NY2d 545, 548-549 [1997]; accord Matter of Gracie Point Community Council v New York State Dept. of Envtl. Conservation, 92 AD3d 123, 128 [2011], lv denied 19 NY3d 807 [2012]). To this end, the promulgating agency's interpretation may not be adjudged irrational simply because other rational constructions of the regulatory provision in question exist (see Matter of Elcor Health Servs. v Novello, 100 NY2d 273, 280 [2003]; Matter of Neighborhood Cleaners Assn.-Intl. v New York State Dept. of Envtl. Conservation, 299 AD2d 790, 792-793 [2002]), nor because the promulgating agency's reading of the relevant regulatory language either broadens its plain-language scope (see Matter of Kaufman v Sarafan, 59 NY2d 855, 857 [1983]) or amounts to a "strict[ly] literal interpretation" (Eagles Landing, LLC v New York City Dept. of Envtl. Protection, 75 AD3d 935, 938 [2010], lv denied 16 NY3d 710 [2011]). Furthermore, "the determination of an agency acting pursuant to its authority and within its area of expertise is[, similarly,] entitled to judicial deference" (Matter of Riverkeeper, Inc. v Johnson, 52 AD3d 1072, 1074 [2008], lv denied 11 NY3d 716 [2009]). In contrast, an agency's interpretation of one of its own regulations is not entitled to deference if that interpretation contradicts the plain language of the regulation (see Matter of Elcor Health Servs. v Novello, 100 NY2d at 280),

_____

[2] We have recently held, in a separate CPLR article 78 proceeding/declaratory judgment action initiated by these petitioners, that Indian Point's generating units are exempt from consistency review for the purposes of pending applications to the Nuclear Regulatory Commission seeking renewals of the units' operating licenses (see Matter of Entergy Nuclear Operation, Inc. v New York State Dept. of State, 125 AD3d 21 [2014], lv granted 25 NY3d 908 [2015]). In our view, this prior determination does not operate to render the issues raised herein moot.

and an agency may be deemed to have acted irrationally if an interpretation of a regulation marks an unsubstantiated departure from the agency's previous position on a given subject (see Matter of Board of Educ. of the Kiryas Joel Vil. Union Free Sch. Dist. v State of New York, 110 AD3d 1231, 1235 [2013], lv denied 22 NY3d 861 [2014]).

As relevant here, the Secretary has the authority to promulgate regulations in furtherance of this state's legislatively codified goal of "conserv[ing] and protect[ing] fish and wildlife habitats identified by [DEC] as critical to the maintenance or re-establishment of species of fish or wildlife" (Executive Law § 912 [3]; see Executive Law §§ 913 [6]; 914 [2]). Two regulations promulgated by DOS pursuant to this statutory authority are directly relevant here; 19 NYCRR 602.5 (a) (1) lists the "characteristics" that an area must exhibit in order to be designated as a "[s]ignificant coastal fish and wildlife habitat," while 19 NYCRR 602.4 (f) empowers the Secretary to modify the boundaries of an existing statutory habitat if, after consulting with DEC and engaging in a notice and comment process, he or she has concluded that "modification is justified by changes to the characteristics of the area which were the basis for the original or subsequent designation."[3]

The parties' fundamental disagreement here centers on the question of whether newly discovered scientific data can support a modification pursuant to 19 NYCRR 602.4 (f). Petitioners contend that, because respondents relied on scientific data discovered after the original 1987 designation of the habitat that now comprises part of Hudson Highlands, there was no conclusive proof of "change to the characteristics" of the relevant section of the Hudson River, as required by 19 NYCRR 602.4 (f), and also that there was no baseline by which to measure change. According to petitioners, respondents

_____

[3]  19 NYCRR 602.4 (f) did not always allow for modification of the boundaries of an existing statutory habitat; in 2000, DOS amended 19 NYCRR 602.4 (f) to include the current language, describing the prior absence of such language as a "technical oversight."

demonstrated, at most, a change to the agencies' subjective understanding of those characteristics.  In response, respondents argue that petitioners' reading of 19 NYCRR 602.4 (f) is contrary to the intent, implementation and broader context of the regulation.

In our view, the information contained in the certified return,[4] along with the scientists' affidavits, establishes that respondents had a rational, scientific basis for their conclusions so as to support the July 2012 modification.[5] Specifically, the Secretary's "Findings, Rating Forms and Habitat Narrative" — a technical memorandum — sets forth the agencies' explanation for the designation of the Hudson Highlands habitat. The certified return also contained a number of scholarly articles, written after 1987, that set forth data regarding the viability of the Hudson River's water-based fauna populations, with one of those articles having been directly prompted by concerns about Indian Point's impact on both the Hudson River and the Atlantic Coast as a whole.

Furthermore, the modification that gave rise to the Hudson Highlands habitat was declared by the Secretary pursuant to DOS's

---

[4]  Petitioners argue that the return is missing critical information that was relied upon by the scientists.  Our review of the affidavits and the accompanying reference list, however, demonstrates that this is not the case.

[5]  Contrary to petitioners' contention, the scientists' affidavits were properly considered "because there was no administrative hearing and the issue here is not one of substantial evidence but, rather, whether the [agency's] determination has a rational basis" (Matter of Kirmayer v New York State Dept. of Civ. Serv., 24 AD3d 850, 852 [2005]; see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]).  Furthermore, when "conflicting inferences can be drawn from the scientific evidence adduced," deference to the agency is necessary (Matter of Riverkeeper, Inc. v Johnson, 52 AD3d at 1074).

interpretation of a regulatory area in which DOS has expertise (see Matter of Riverkeeper, Inc. v Johnson, 52 AD3d at 1074). In addition, because the Secretary is authorized by statute to "amend [the boundaries of the areas subject to state environmental regulation so as] to correct errors or make changes that are in furtherance of the policies and purposes of" Executive Law article 42 (Executive Law § 914 [2]), it cannot be said that the Secretary's reading of 19 NYCRR 602.4 (f) is irrational or unreasonable (see e.g. Matter of Gaines v New York State Div. of Hous. & Community Renewal, 90 NY2d at 548-549; Matter of ELG Utica Alloys, Inc. v Department of Envtl. Conservation, 116 AD3d 1200, 1202 [2014], appeal dismissed 24 NY3d 929 [2014]). Finally, there has been no suggestion here that DOS's instant construction of 19 NYCRR 602.4 (f) contradicts a prior interpretation (see Matter of Board of Educ. of the Kiryas Joel Vil. Union Free Sch. Dist. v State of New York, 110 AD3d at 1235), or amounts to an outright refutation of the plain language of 19 NYCRR 602.4 (f) (see Matter of Elcor Health Servs. v Novello, 100 NY2d at 280). Accordingly, we defer to DOS's interpretation of 19 NYCRR 602.4 (f) and find that the designation was rational and supported by the record.

Petitioners further argue that the habitat boundaries' modification that gave rise to the Hudson Highlands habitat constituted "formal" rulemaking such as would be subject to the relatively stringent procedural requirements codified at State Administrative Procedure Act §§ 202 and 203. State Administrative Procedure Act § 102 (2) (a) (i), in pertinent part, defines a "[r]ule" as "the whole or part of each agency statement, regulation or code of general applicability that implements or applies law." In contrast, State Administrative Procedure Act § 102 (2) (b) (iv) excludes from this statutory definition "forms and instructions, interpretive statements and statements of general policy which in themselves have no legal effect but are merely explanatory." While "there is no clear bright line between a 'rule' or 'regulation' and an interpretative policy," an agency does not engage in formal rulemaking when the practical effect of an agency's updated policy is that a discrete group of regulated entities or individuals likely will be subjected to a greater degree of regulatory scrutiny than are the majority of those regulated by

the agency (Cubas v Martinez, 8 NY3d 611, 621 [2007]; see Matter
of Schwartfigure v Hartnett, 83 NY2d 296, 301-302 [1994]; Matter
of Pharmacists Socy. of State of N.Y., Inc. v Pataki, 58 AD3d
924, 926 [2009], lv denied 12 NY3d 710 [2009]).  When an agency
engages in a course of regulatory action that amounts to formal
rulemaking but does not comply with the procedural requirements
of State Administrative Procedure Act article 2, that regulatory
action must be annulled (see Matter of Homestead Funding Corp. v
State of N.Y. Banking Dept., 95 AD3d 1410, 1413 [2012]).

     We agree with respondents that the habitat boundaries'
modification that gave rise to Hudson Highlands did not amount to
formal rulemaking.  The modification at issue does not apply to
all entities or individuals regulated by DOS pursuant to its
environmental regulatory authority, or even to a substantial
number thereof (compare Matter of Homestead Funding Corp. v State
of N.Y. Banking Dept., 95 AD3d at 1412-1413), but, rather, would
potentially result in an increased regulatory burden for a
geographically distinct group of entities or individuals (see
e.g. Cubas v Martinez, 8 NY3d at 621).  Moreover, because the
subject modification was the result of the consideration of
scientific data that was both unique to the 20-mile stretch of
the river in question and pertinent to the environmental
characteristics set forth in 19 NYCRR 602.5 (a) (1), it cannot be
said that the modification "[dis]regard[ed] . . . facts and
circumstances relevant to the regulatory scheme" pursuant to
which DOS and DEC seek to protect the environmental viability of
this state's coastal areas (Matter of Roman Catholic Diocese of
Albany v New York State Dept. of Health, 66 NY2d 948, 951
[1985]).

     Petitioners further argue that, in declaring the July 2012
modification, DOS announced a "habitat impairment test" that
would govern industrial activity at or near the Hudson Highlands
habitat.  Petitioners seem to suggest that imposition of such
habitat impairment test, standing alone, amounts to formal
rulemaking.  A close reading of the language of the habitat
impairment test reveals, however, that it does not constitute a
formal rule because it "encompass[es] both fixed and variable
factors unique to" a particular industrial activity, with those
factors to be "considered . . . on a case-by-case" basis (Matter

of Trustees of Masonic Hall & Asylum Fund v Axelrod, 174 AD2d
199, 204 [1992]; accord Matter of New York City Tr. Auth. v New
York State Dept. of Labor, 88 NY2d 225, 230 [1996]).  Thus, the
extension of the boundaries to formulate the Hudson Highlands
habitat amounts to a routine program change and not formal
rulemaking.

Lastly, because the administrative record here already
contained sufficient evidence upon which to reject petitioners'
contention that the July 2012 modification lacked a rational
basis, Supreme Court's denial of petitioners' discovery was not
an abuse of discretion (see CPLR 408; Matter of Lally v Johnson
City Cent. Sch. Dist., 105 AD3d 1129, 1132 [2013]; Matter of Held
v State of N.Y. Workers' Compensation Bd., 103 AD3d 1063, 1064
[2013]).  Here, the Secretary's public declaration of the
modification that created the Hudson Highlands habitat
specifically referenced DEC's involvement in the determination
that this modification was necessary as a matter of environmental
policy and referenced relevant geological data gathered following
the original 1987 designation.  In addition, two other documents
disclosed as part of respondents' certified return — from 2005
and 2011 — reveal that DOS and DEC had been collaborating on
possible boundary revisions to the Hudson River's statutory
habitats for a number of years prior to the May 2011 notice that
alerted the general public that such modifications were in the
offing.  Moreover, as discussed above, the certified return also
contained a number of data-filled, scholarly articles that were
written after 1987.  Thus, the scientists' affidavits — which
petitioners label as wholly unsupported by the record — were
merely instances of the scientists referencing interagency-
collaboration and change-of-characteristics evidence
fundamentally similar to, if not duplicative of, that which
already existed in the record.

Because both of these categories of substantiating evidence
had been affirmatively referenced by the Secretary when he
announced the July 2012 modification, Supreme Court's
determination to deny petitioners discovery as to these
affidavits — while reserving the right to subsequently credit
those statements when reaching its final judgment on the
application — was not an improper consideration of grounds not

presented by the agency at the time of its determination (see Matter of Scanlon v Buffalo Pub. School Sys., 90 NY2d 662, 678 [1997]). Moreover, Supreme Court was not obligated to ignore the scientists' affidavits solely because they were generated in response to petitioners' application (see Matter of Office Bldg. Assoc., LLC v Empire Zone Designation Bd., 95 AD3d 1402, 1405 [2012]). Also, Supreme Court's concern that granting petitioners the disclosure they sought would result in a burden for DOS and DEC staff (see Matter of Protect the Adirondacks! Inc. v Adirondack Park Agency, 121 AD3d 63, 78 [2014], lv dismissed and denied 24 NY3d 1065 [2014]), along with its recognition that petitioners had received massive amounts of relevant DOS and DEC internal documents via Freedom of Information Law requests (see Matter of Held v State of N.Y. Workers' Compensation Bd., 103 AD3d at 1064), lend additional support to the conclusion that Supreme Court's denial of petitioners' disclosure request did not constitute an abuse of discretion. This is especially so inasmuch as petitioners failed to demonstrate their need for the additional documents.

In response to petitioners' discovery and Freedom of Information Law requests, respondents withheld a small number of documents pursuant to Public Officers' Law § 87 (2) (g), which allows for "people within an agency to exchange opinions, advice and criticism freely and frankly, without the chilling prospect of public disclosure" (Matter of New York Times Co. v City of N.Y. Fire Dept., 4 NY3d 477, 488 [2005]). Supreme Court correctly concluded that "respondents' interest in maintaining the confidentiality of the records and in allowing the candid exchange of 'opinions, advice and criticism'" was valid and outweighed petitioners' interest in having them.[6] Petitioners argue that respondents waived the deliberative process privilege by describing the agencies' decision-making process within the scientists' affidavits. We find petitioners' claims that respondents have waived the deliberative process privilege to be unpersuasive (see generally New York Tel. Co. v Nassau County, 54 AD3d 368, 369-370 [2008]).

---

[6] Petitioners have not appealed from the denial of their Freedom of Information Law requests.

Petitioners' remaining contentions have been considered and are found to be lacking in merit.

McCarthy, J.P., Egan Jr. and Devine, JJ., concur.

ORDERED that the judgment is affirmed, without costs.

ENTER:

Robert D. Mayberger
Clerk of the Court