*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  October 27, 2016                522385
_____

NEW YORK INSURANCE ASSOCIATION,
    INC., et al.,
                        Appellants,
                        et al.,
                        Plaintiffs,        OPINION AND ORDER

        v

STATE OF NEW YORK et al.,
                        Respondents.
_____

Calendar Date:   September 16, 2016

Before:   Peters, P.J., McCarthy, Garry, Clark and Aarons, JJ.

_____

        O'Connell & Aronowitz, Albany (Jeffrey J. Sherrin of
counsel), for appellants.

        Eric T. Schneiderman, Attorney General, Albany (Victor
Paladino of counsel), for respondents.

_____

Clark, J.

        Appeal from an order of the Supreme Court (McDonough, J.),
entered March 31, 2015 in Albany County, which, among other
things, granted defendants' motion for summary judgment
dismissing the third amended complaint.

        Plaintiff New York Insurance Association, Inc. (hereinafter
NYIA) is a non-profit trade association comprised of property and
casualty insurance companies, domestic and foreign, that issue
insurance policies throughout New York.  Pursuant to Financial
Services Law § 206 and its repealed predecessor, Insurance Law
former § 332, certain of NYIA's members, including the six named

plaintiff property and casualty insurance companies (hereinafter collectively referred to as plaintiff insurers), are required to pay assessment fees to defray the operating expenses of the Department of Financial Services (hereinafter DFS) and its predecessor, the Insurance Department[1] — two administrative bodies charged with supervising and regulating the insurance industry (see Financial Services Law §§ 102, 201). Specifically, domestic insurers and licensed United States branches of alien insurers domiciled in New York (hereinafter collectively referred to as insurers) are required to pay their pro rata shares of the annual expenses of the Department (see Insurance Law former § 332; Financial Services Law § 206). Insurers receive quarterly invoices demanding payment of their pro rata shares of the Department's annual expenses and, at the end of each fiscal year, they receive final or "true-up" assessment invoices requiring those insurers that had paid less than their pro rata shares to pay the difference and affording those insurers that had overpaid the option of a refund or a credit against subsequent assessments (see Insurance Law former § 332 [b]; Financial Services Law § 206 [b]). Assessments are deposited into the Department's "339.B6 account," a special revenue fund.

In April 2008, the Legislature enacted a budget bill for fiscal year 2008-2009, which included the costs of various governmental programs (hereinafter referred to as the sub-allocated programs) — most of which were administered by other state agencies — in the Department's appropriated expenses. The budget bills enacted for the fiscal years from 2009-2010 through 2012-2013 also included the costs of the sub-allocated programs. Further, in February 2009, the Legislature enacted a statute which provided that, notwithstanding any law to the contrary, for fiscal year 2008-2009, "the total value of the annual assessment w[ould] be equal to the total value of the [D]epartment's enacted

---

[1] In 2011, the Insurance Department merged with the Banking Department to create DFS (see Financial Services Law § 102). Because plaintiffs' claims involve events occurring both before and after the creation of DFS, the Insurance Department and DFS will be, for the purposes of this decision, collectively referred to as the Department.

appropriations," as opposed to the Department's actual expenses, and that, if the total value of the assessment exceeded the Department's actual annual expenses, the State Comptroller was, at the request of defendant Director of the Budget, authorized and directed to transfer up to $4.5 million from the unencumbered balance of the Department's 339.B6 account into the general fund of defendant State of New York (L 2009, ch 2, part H, § 1). The Legislature enacted five similar statutes for fiscal years 2009-2010 and 2010-2011 (see L 2009, ch 56, part PP, § 2 [up to $15 million]; L 2009, ch 503, part E, § 3 [up to $575 million]; L 2009, ch 503, part E, § 5 [up to $4.94 million]; L 2010, ch 56, part JJ, § 9 [up to $500 million]; L 2010, ch 56, part JJ, § 14 [any amount]). Pursuant to these statutes, six transfers of the unused assessments were made from the Department's 339.B6 account into the State's general fund, totaling over $89 million.

In January 2010, NYIA and plaintiff insurers (hereinafter collectively referred to as plaintiffs) commenced this action for, among other things, declaratory relief challenging the assessments levied during fiscal years 2008-2009 and 2009-2010 to fund the sub-allocated programs, as well as the statute enacted in February 2009 that authorized the transfer of unused assessments from the 339.B6 account into the State's general fund (see L 2009, ch 2, part H, § 1). In 2011 and 2013, following joinder of issue, plaintiffs filed amended complaints extending the scope of their claims to include the assessments levied during fiscal years 2010-2011 and 2011-2012 to fund the sub-allocated programs and to add five causes of action challenging the statutes authorizing the five additional transfers of the unused assessments during fiscal years 2009-2010 and 2010-2011. Defendants answered both amended complaints.

In November 2013, plaintiffs and defendants each moved for summary judgment, and, in February 2014, plaintiffs moved for leave to file a third amended complaint to join as parties other individual members of NYIA and to extend their existing claims to include the portions of the assessments levied during fiscal year 2012-2013 to fund the sub-allocated programs. Defendants cross-moved for an order holding the parties' summary judgment motions in abeyance and, in the event that Supreme Court granted plaintiffs leave to file a third amended complaint, for

permission to conduct additional discovery. Supreme Court granted defendants' cross motion, held the summary judgment motions in abeyance pending the conclusion of further discovery, granted plaintiffs' motion to the extent of allowing them to file a third amended complaint and otherwise denied plaintiffs' motion. Plaintiffs filed a third amended complaint and defendants answered. Thereafter, upon the completion of discovery and after the parties supplemented their respective summary judgment motions, Supreme Court, among other things, granted defendants' summary judgment motion dismissing the third amended complaint and declared that Financial Services Law § 206 and its repealed predecessor, Insurance Law former § 332, were "constitutional, valid and enforceable as applied to plaintiffs." Plaintiffs appeal.

Plaintiffs' claims, insofar as relevant to this appeal,[2] can be separated into two categories: those that challenge the propriety of including the costs of the sub-allocated programs in the annual assessments levied during fiscal years 2008-2009 through 2012-2013 and those that challenge the six statutes authorizing the retention of assessments levied in excess of the Department's actual expenses in fiscal years 2008-2009, 2009-2010 and 2010-2011, as well as the transfers of unused assessments into the State's general fund. Causes of action one through four fall into the former category, while causes of action six through eleven fall into the latter category. We first focus our attention on those of plaintiffs' arguments concerning causes of action one through four.

Plaintiffs challenge Supreme Court's dismissal of portions of their first cause of action, as well as their second cause of action, as time-barred. "In order to determine the [s]tatute of [l]imitations applicable to a particular declaratory judgment

_____

[2] Inasmuch as plaintiffs did not address in their brief the dismissal of their fifth and twelfth causes of action, their appeal related thereto is deemed abandoned (see NYAHSA Servs., Inc., Self-Ins. Trust v People Care Inc., 141 AD3d 785, 787 n 4 [2016]; Matter of Kairis v Fischer, 138 AD3d 1360, 1360 n [2016]).

action, the court must 'examine the substance of that action to identify the relationship out of which the claim arises and the relief sought'" (Matter of Save the Pine Bush v City of Albany, 70 NY2d 193, 202 [1987], quoting Solnick v Whalen, 49 NY2d 224, 229 [1980]; see Gress v Brown, 20 NY3d 957, 959 [2012]; Thrun v Cuomo, 112 AD3d 1038, 1040 [2013], lv denied 22 NY3d 865 [2014]). "If that examination reveals that the rights of the parties sought to be stabilized in the action for declaratory relief are, or have been, open to resolution through a form of proceeding for which a specific limitation period is statutorily provided, then that period limits the time for commencement of the declaratory judgment action" (Solnick v Whalen, 49 NY2d at 229-230; accord Press v County of Monroe, 50 NY2d 695, 701 [1980]; see Gress v Brown, 20 NY3d at 959; Spinney at Pond View, LLC v Town Bd. of the Town of Schodack, 99 AD3d 1088, 1089 [2012]). "Where, as here, governmental activity is being challenged, the immediate inquiry is whether the challenge could have been advanced in a CPLR article 78 proceeding" (Northern Elec. Power Co., L.P. v Hudson Riv.-Black Riv. Regulating Dist., 122 AD3d 1185, 1187 [2014] [internal quotation marks, emphasis and citations omitted]; see New York City Health & Hosps. Corp. v McBarnette, 84 NY2d 194, 201 [1994]; Matter of Capital Dist. Regional Off-Track Betting Corp. v New York State Racing & Wagering Bd., 97 AD3d 1044, 1045 [2012]).

Plaintiffs' first cause of action attacks the manner in which the Director of the Budget and defendant Superintendent of Financial Services (and previously the Superintendent of Insurance) implemented Insurance Law former § 332 and Financial Services Law § 206 – in essence, whether they acted arbitrarily and capriciously or in excess of their authority by including the costs of the sub-allocated programs in the annual assessments collected during fiscal years 2008-2009 through 2012-2013 – and, therefore, could have been advanced in a CPLR article 78 proceeding (see CPLR 7803 [3]; Financial Services Law § 308 [a]; New York City Health & Hosps. Corp. v McBarnette, 84 NY2d at 205; Northern Elec. Power Co., L.P. v Hudson Riv.-Black Riv. Regulating Dist., 122 AD3d at 1188; Fulton County Economic Dev. Corp. v New York State Auths. Budget Off., 100 AD3d 1335, 1336 [2012]). Accordingly, Supreme Court properly applied a four-month statute of limitations to plaintiffs' first cause of action

(see CPLR 217 [1]), which began to run at the time that each quarterly assessment was levied and not at the time of the "true-up" assessment (see Matter of Held v State of N.Y. Workers' Compensation Bd., 103 AD3d 1063, 1064 [2013]; see generally Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom. of City of N.Y., 5 NY3d 30, 34 [2005]; Matter of Properties of N.Y., Inc. v Planning Bd. of Town of Stuyvesant, 35 AD3d 941, 943 [2006]), to determine that only so much of the first cause of action as challenged the quarterly assessment levied on November 5, 2009 was timely.

Interpreted broadly, plaintiffs' second cause of action challenges the constitutionality of Insurance Law former § 332 and Financial Services Law § 206, a challenge which is inappropriate for review in a CPLR article 78 proceeding (see Ames Volkswagen v State Tax Commn., 47 NY2d 345, 348 [1979]; Matter of Overhill Bldg. Co. v Delany, 28 NY2d 449, 458 [1971]; Matter of Llana v Town of Pittstown, 234 AD2d 881, 883 [1996]). Thus, Supreme Court should have applied the residual six-year statute of limitations to plaintiffs' second cause of action (see CPLR 213 [1]). Applying the appropriate statute of limitations, which began to run upon the enactment of the challenged statutory provisions (see Matter of McCarthy v Zoning Bd. of Appeals of Town of Niskayuna, 283 AD2d 857, 858 [2001]; Matter of Schulz v New York State Legislature, 278 AD2d 710, 713 [2000], lv denied 3 NY3d 606 [2004]; Matter of Frontier Ins. Co. v Town Bd. of Town of Thompson, 252 AD2d 928, 930 [1998]; Almor Assoc. v Town of Skaneateles, 231 AD2d 863, 863 [1996]), only that portion of the second cause of action alleging that Financial Services Law § 206 unlawfully delegated to the Department the power to tax is timely (see L 2011, ch 62, part A, § 1).

Turning to the merits, with regard to the timely portion of plaintiffs' first cause of action, the operation of the Laws of 2009 (ch 503, part E, § 5) during fiscal year 2009-2010 is the dispositive circumstance in our analysis of whether the Department's inclusion of the costs of the sub-allocated programs in the November 5, 2009 quarterly assessment was an unconstitutional usurpation of the Legislature's exclusive power to tax or arbitrary and capricious. During that fiscal year, the Laws of 2009 (ch 503, part E, § 5) — which applied

notwithstanding Insurance Law former § 332 or any other contrary law — required that the total value of the assessments levied to defray "the annual expenses related to [the Department's] activities and operations" be equal to the amount of the Department's appropriated expenses, which included the costs of the sub-allocated programs.  Given that the inclusion of the costs of the sub-allocated programs was statutorily mandated in fiscal year 2009-2010, the Department did not act in excess of its authority or in an arbitrary or capricious manner when it included those costs in the November 5, 2009 quarterly assessment (see Matter of Homestead Funding Corp. v State of N.Y. Banking Dept., 95 AD3d 1410, 1411 [2012]).  Thus, the entirety of plaintiffs' first cause of action must be dismissed.[3]

The timely portion of plaintiffs' second cause of action alleges that Financial Services Law § 206, on its face, unlawfully delegates to the Department the Legislature's exclusive power to tax (see NY Const, art III, § 1).  In relevant part, Financial Services Law § 206 states:

> "For each fiscal year commencing on or after April [1, 2012], assessments to defray operating expenses, including all direct and indirect costs, of the [D]epartment . . . shall be assessed by the [S]uperintendent in accordance with this subsection.  Persons regulated under the insurance law shall be assessed by the [S]uperintendent for the operating expenses of the [D]epartment that are

---

[3]  Plaintiffs did not allege that the six statutes authorizing the transfers (and also redefining the annual assessment to be the appropriated expenses of the Department rather than its actual expenses) imposed an unconstitutional tax and, therefore, this claim is not properly before us (see Matter of Tomarken v State of New York, 100 AD3d 1072, 1076 [2012]; Matter of Association for Community Living, Inc. v New York State Off. of Mental Health, 92 AD3d 1066, 1068 [2012], appeal dismissed 19 NY3d 874 [2012], lv denied 19 NY3d 815 [2012]).

> solely attributable to regulating persons
> under the insurance law."

Giving effect to its plain language (see McKinney's Cons Laws of NY, Book 1, Statutes § 76), it is clear that, through its enactment of Financial Services Law § 206, the Legislature solely authorized the Department to impose regulatory assessment fees upon insurers to defray "the operating expenses" associated with the regulatory functions of the Department and did not delegate its exclusive power to tax to the Department (Financial Services Law § 206 [a]), thereby rendering the timely portion of plaintiffs' second cause of action without merit.

In their third and fourth causes of action, plaintiffs allege that the inclusion of the costs of the sub-allocated programs in the annual assessments violated NY Constitution, article XVI, § 3, which states that "[i]ntangible personal property shall not be taxed ad valorem nor shall any excise tax be levied solely because of the ownership or possession thereof," as well as NY Constitution, article III, § 22, which requires tax laws to "distinctly state the tax and the object to which it is to be applied."[4]  To evaluate these claims, we must determine whether the annual assessments levied during fiscal years 2008-2009 through 2012-2013 were, to the extent that they included the costs of the sub-allocated programs, fees or taxes.

"A tax is a charge that a government exacts from a citizen to defray the general costs of government unrelated to any particular benefit received by that citizen" (Matter of Walton v New York State Dept. of Correctional Servs., 13 NY3d 475, 485 [2009] [citation omitted]; see American Sugar Ref. Co. of N.Y. v Waterfront Commn. of N.Y. Harbor, 55 NY2d 11, 27 [1982], appeal dismissed 458 US 1101 [1982]; Matter of Homestead Funding Corp. v State of N.Y. Banking Dept., 95 AD3d at 1410; New York Tel. Co. v City of Amsterdam, 200 AD2d 315, 318 [1994]).  In contrast, "a fee is a charge, imposed upon certain citizens or entities who use particular services of or obtain benefits from a particular

---

[4]  Defendants do not challenge Supreme Court's determination that plaintiffs' third and fourth causes of action are timely.

governmental program or agency, to defray the costs of those services or benefits" (Matter of Homestead Funding Corp. v State of N.Y. Banking Dept., 95 AD3d at 1410-1411; see American Sugar Ref. Co. of N.Y. v Waterfront Commn. of N.Y. Harbor, 55 NY2d at 26-27; Jewish Reconstructionist Synagogue of N. Shore v Incorporated Vil. of Roslyn Harbor, 40 NY2d 158, 162 [1976]; Matter of Joslin v Regan, 63 AD2d 466, 470 [1978], affd 48 NY2d 746 [1979]).

The label assigned to an assessment (i.e., tax or fee) is not determinative of its true nature (see American Ins. Assn. v Lewis, 50 NY2d 617, 623 [1980]; New York Tel. Co. v City of Amsterdam, 200 AD2d at 317; Albany Area Bldrs. Assn. v Town of Guilderland, 141 AD2d 293, 298 [1988], affd 74 NY2d 372 [1989]; Matter of Joslin v Regan, 63 AD2d at 470). Therefore, courts must examine the purpose and use of the funds collected, as well as the government benefits received by the entities to be regulated (see Matter of Walton v New York State Dept. of Correctional Servs., 13 NY3d at 488 n 9; Jewish Reconstructionist Synagogue of N. Shore v Incorporated Vil. of Roslyn Harbor, 40 NY2d at 162). Funds collected are found to be taxes where they are not reasonably necessary to the accomplishment of the regulatory purposes of the agency charged with their collection or the entities to be regulated are not primarily or proportionally benefitted through their expenditure (see American Ins. Assn. v Lewis, 50 NY2d at 622; Jewish Reconstructionist Synagogue of N. Shore v Incorporated Vil. of Roslyn Harbor, 40 NY2d at 163; Matter of Phillips v Town of Clifton Park Water Auth., 286 AD2d 834, 835 [2001], lv denied 97 NY2d 613 [2002]; Coconato v Town of Esopus, 152 AD2d 39, 44 [1989], lv denied 76 NY2d 701 [1990]; Matter of Torsoe Bros. Constr. Corp. v Board of Trustees of Inc. Vil. of Monroe, 49 AD2d 461, 465 [1975]). "To the extent that fees charged are exacted for revenue purposes or to offset the cost of general governmental functions[,] they are invalid as an unauthorized tax" (Matter of Torsoe Bros. Constr. Corp. v Board of Trustees of Inc. Vil. of Monroe, 49 AD2d at 465; accord Matter of Phillips v Town of Clifton Park Water Auth., 286 AD2d at 835; see Matter of Walton v New York State Dept. of Correctional Servs., 13 NY3d at 488 n 9; Albany Area Bldrs. Assn. v Town of Guilderland, 141 AD2d at 298).

To establish that the costs of the sub-allocated programs were properly assessed as fees, defendants proffered the affidavits of employees involved in the administration of the sub-allocated programs, who attested to the purposes and benefits of each program. These affidavits demonstrated that each of the sub-allocated programs funded during fiscal years 2008-2009 through 2012-2013 was reasonably necessary to the accomplishment of the regulatory purposes of the Department, whether explicitly or implicitly derived from the Insurance Law or the Financial Services Law. As defendants established their prima facie entitlement to summary judgment dismissing causes of action three and four, the burden shifted to plaintiffs to raise triable issues of fact relating to the purposes of, or benefits derived from, each of the challenged programs, as established by defendants (see generally Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012]; Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). Plaintiffs' submissions failed to do so. Accordingly, as defendants demonstrated that the annual assessments levied during the challenged fiscal years were not taxes, the constitutional provisions are inapplicable and plaintiffs' third and fourth causes of action were properly dismissed (see Matter of Joslin v Regan, 63 AD2d at 470).

We now address causes of action 6 through 11, wherein plaintiffs allege that the six statutes authorizing the retention and transfer of assessments levied in excess of the Department's annual expenses violated the Takings Clauses of the NY and US Constitutions (see US Const Amend V; NY Const, art I, § 7).[5]

_____

[5] Plaintiffs argue in their brief that the funding of the sub-allocated programs constituted a taking because the costs of the programs were not expenses of the Department. However, we do not read the third amended complaint to plead this particular claim and, thus, it is unpreserved for our review (see Matter of Tomarken v State of New York, 100 AD3d at 1076; Matter of Association for Community Living, Inc. v New York State Off. of Mental Health, 92 AD3d at 1068). In any event, even if the third amended complaint included such a claim, it would be without merit, given that defendants demonstrated that the costs of the sub-allocated programs were properly assessed as fees and

Initially, with respect to the issue of timeliness, we disagree
with Supreme Court and defendants that a four-month statute of
limitations is applicable simply because the transfers could not
occur until the Director of the Budget took administrative action
to request the transfers (see L 2009, ch 2, part H, § 1; L 2009,
ch 56, part PP, § 2; L 2009, ch 503, part E, §§ 3, 5; L 2010, ch
56, part JJ, §§ 9, 14).  The alleged takings arose out of the
statutory language authorizing the retention of funds collected
over and above the Department's actual annual expenses and the
subsequent transfer of excess assessments from the Department's
339.B6 account into the State's general fund.  Inasmuch as claims
6 through 11 attack the constitutionality of legislation, they
are subject to a six-year statute of limitations (see Matter of
Save the Pine Bush v City of Albany, 70 NY2d at 203-204; Matter
of Kovarsky v Housing & Dev. Admin. of City of N.Y., 31 NY2d 184,
191-192 [1972]; Matter of Frontier Ins. Co. v Town Bd. of Town of
Thompson, 252 AD2d at 930).  Having been commenced within the
requisite time frame, these causes of action are timely.

     As to the merits, in assessing whether the six challenged
statutes effectuated a taking of private property without just
compensation, we must first determine whether plaintiff insurers
held a vested property right entitling them to a refund or credit
for money levied in excess of the Department's actual annual
expenses during fiscal years 2008-2009, 2009-2010 and 2010-2011.
To that end, "constitutionally protected property interests are
'created and their dimensions are defined by existing rules or
understandings that stem from an independent source such as state
law'" (Alliance of Am. Insurers v Chu, 77 NY2d 573, 585 [1991],
quoting Board of Regents of State Colleges v Roth, 408 US 564,
577 [1972]).  Here, Insurance Law former § 332 clearly created a
property right in favor of the insurers, as it provided that the
annual assessment be collected to defray the expenses of the
Department and that the insurers be reimbursed for, or credited
with, any overpayment of their pro rata shares resulting from a
discrepancy between the Department's estimated annual expenses
and its actual annual expenses, as determined at the end of each
fiscal year (see Alliance of Am. Insurers v Chu, 77 NY2d at

_____

plaintiffs failed to rebut that showing.

585).[6]

Just as the Legislature has the power to statutorily create property interests, so too may it legislatively alter or take away those same property interests, though its "power to alter the rights and obligations that attach to completed transactions is not as broad as its power to regulate future transactions" (Alliance of Am. Insurers v Chu, 77 NY2d at 585; see Matter of Hodes v Axelrod, 70 NY2d 364, 369-370 [1987]).  Here, the Legislature permissibly extinguished the property interest created in favor of the insurers in Insurance Law former § 332 by enacting the challenged statutes prior to the end of the fiscal year in which they applied.  Despite their payment of quarterly assessments during the fiscal years affected by the challenged statutes, plaintiff insurers' right to a refund or credit of any overpayment did not vest until the end of the fiscal year, when it could be determined whether each had overpaid.  To hold otherwise would allow an insurer to claim a deprivation of a property right at a time when it could not yet be determined if there was in fact a deprivation.  Accordingly, because the challenged statutes extinguished, albeit on a temporary basis, the property right created by Insurance Law former § 332 before it vested, plaintiffs' takings claims fail as a matter of law (see Matter of Novara v Cantor Fitzgerald, LP, 20 AD3d 103, 108 [2005], lv denied 5 NY3d 710 [2005]; see generally Matter of Gazza v New York State Dept. of Envtl. Conservation, 89 NY2d 603, 613-615 [1997], cert denied 522 US 813 [1997]; Preble Aggregate v Town of Preble, 263 AD2d 849, 852 [1999], lv denied 94 NY2d 760 [2000]; compare Alliance of Am. Insurers v Chu, 77 NY2d at 586).

In the absence of any viable causes of action, we need not address plaintiffs' argument that Supreme Court improvidently exercised its discretion in denying their application to join as plaintiffs additional members of NYIA.  To the extent that any other of the parties' contentions have not been expressly discussed herein, they are either rendered academic by this

_____

[6]  We need not examine the language in Financial Services Law § 206 because that statute had not yet been enacted when the six challenged statutes were in effect.

decision or have been examined and found to be without merit.

Peters, P.J., McCarthy, Garry and Aarons, JJ., concur.


ORDERED that the order is affirmed, without costs.




ENTER:

Robert D. Mayberger
Clerk of the Court